2008 UT App 306

**ShaRon WILLIAMS and Lynn Williams, Plaintiffs and Appellants,**

v.

**Dennis BENCH; Brent Bodily; Adam Christofferson; Craig Christofferson; Robert Eames; Devon Ellis; Mickey Ellis; Jerry Fulmer; Jimmy Germer; Dale Hammon; Scott Hammon; Mike Howell; Brent Keyes; Ray Page; Don Palfreyman; Dave Squires; Greg Warg; Mac White; Bruce Woolsey; Ryan Woolsey; B.J. Burkdoll; Jim Burkdoll; Gary McDaniel; Jim Vowles; John Elwess; Harold Luni; Bill New; Scott New; John New; Jack Harris; Bruno Perry; Lyle Mason; Bob Larvee Jr.; Stags Car Club, a voluntary unincorporated association; and Ralph S. Wiggins, Defendants and Appellees.**

No. 20070029–CA.

Court of Appeals of Utah.

Aug. 21, 2008.

Bradley L. Booke and Jacque M. Ramos, Salt Lake City, for Appellants.

Gary L. Johnson and Michael K. Woolley, Salt Lake City, for Appellees.

Before GREENWOOD, P.J., THORNE, Associate P.J., and McHUGH, J.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Plaintiffs ShaRon and Lynn Williams appeal the district court's grant of Defendants' rule 12(b)(6) motion to dismiss.[1]

---

1. The motion to dismiss was originally filed by less than all of the named defendants but was ultimately joined by all defendants except Ralph S. Wiggins and Stags Car Club (as an entity),

Plaintiffs claim that the trial court erred in (1) concluding that they had failed to state a claim upon which relief could be granted and (2) refusing to allow them to amend their complaint upon granting Defendants' motion to dismiss. Plaintiffs also contend that it was procedurally improper for the trial court to certify its dismissal of Defendants as a final order pursuant to rule 54(b) of the Utah Rules of Civil Procedure because the trial court failed to make appropriate factual findings supporting such a determination. We affirm.

## BACKGROUND [2]

¶ 2 On September 12, 2004, Stags Car Club (the Club)—a voluntary, unincorporated association—held a "steak fry" at George Whalen Park in Roy, Utah, for members and their invited guests.[3] Mrs. Williams attended the steak fry with her husband, Lynn Williams. Shortly after arriving at the park, Mrs. Williams "lay down on the grass between two trees and fell asleep." Not long after, the secretary of the Club, Ralph S. Wiggins, climbed into his pickup truck "to drive to get a cooler for use by Defendant Stags Car Club in the course of [the steak fry] and for the benefit of its members, including Defendants." Upon driving away, Wiggins drove over and severely injured Mrs. Williams as she lay sleeping.

¶ 3 Plaintiffs originally filed suit against Wiggins, the Club, and John Does 1–100, alleging that the John Does were both directly and vicariously liable for Mrs. Williams's injuries due to their membership in the Club,

their responsibilities related to hosting the steak fry, and their receipt of the privileges and benefits of Club membership. Upon stipulation, Plaintiffs filed an Amended Complaint naming the Club, Wiggins, and Defendants, all of whom are Club members.

¶ 4 The Amended Complaint likewise alleged that Defendants were each individually liable for Mrs. Williams's injuries because they, as members of the Club and as persons responsible for the event, owed a duty "to exercise a reasonable lookout and reasonable care for persons present at and participating in the event, including without limitation a duty to observe the movement of vehicles at the event and to warn persons of the presence of moving motor vehicles." In addition, the Amended Complaint alleged that Defendants were "vicariously liable for the negligent acts of [Wiggins] ... [b]y virtue of their status as members of [the Club] ... and as recipients of the privileges and benefits of membership [in the Club]."

¶ 5 Several of the named defendants moved to dismiss the Amended Complaint for failure to state a claim upon which relief could be granted. See Utah R. Civ. P. 12(b)(6). Although defendant Jimmie Germer had earlier filed and briefed a motion for summary judgment, all of the named defendants—except Wiggins and the Club—ultimately joined in the motion to dismiss. After a hearing, the trial court granted the motion. On November 30, 2006, the trial court signed an order (the Order) dismissing Defendants pursuant to rule 12(b)(6) and cer-

---

who are not parties to this appeal. Our references to Defendants throughout this opinion include only those individuals who are parties to this appeal. See Analysis Part I for a discussion of the appropriateness of Defendants' present appeal.

2. Because this is an appeal of the trial court's grant of a rule 12(b)(6) motion, we accept as true the facts alleged in the complaint and, accordingly, recite the facts as contained therein. See, e.g., Saint Benedict's Dev. Co. v. Saint Benedict's Hosp., 811 P.2d 194, 196 (Utah 1991).

3. The complaint states that the steak fry was held "for entertaining club members and their invitees" and that "Plaintiff ShaRon Williams was an invitee of Defendant Stags Car Club." However, Plaintiffs appear to confuse the lay definition of "invitee" with the somewhat counterintuitive

definition of "invitee" as used in the property and tort law contexts. Compare Webster's Ninth New Collegiate Dictionary 637 (Frederick C. Mish et al. eds., 1986) (defining "invitee" as "an invited person"), available at http://www.merriam-webster.com/dictionary/invitee, with Black's Law Dictionary 832 (7th ed.1999) (defining "invitee" as one who, by express or implied invitation, "enter[s] or use[s] another's premises ... such as a business visitor.... Also termed business guest."). In light of the fact that Plaintiffs' complaint contained no other allegations that the event was for a business related purpose or that the site of the steak fry belonged to the Club or one of the Defendants, we use the lay definition and refer to the event as open to the Club's members and their invited guests.

tifying the dismissal as final pursuant to rule 54(b) of the Utah Rules of Civil Procedure. *See id.* R. 54(b). After the Order was issued, Defendants filed proposed findings of fact and rationale for the trial court's consideration. Plaintiffs filed a notice of objection to the proposed findings and rationale, but then filed this appeal prior to the trial court having ruled on the objection. The trial court subsequently issued Findings and Rationale for Certifying Order Dismissing Individual Defendants as Final Per Rule 54(b). Plaintiffs appeal.

## ISSUES AND STANDARDS OF REVIEW

¶6 Plaintiffs raise three claims on appeal.[4] First, Plaintiffs argue that the trial court erroneously dismissed their complaint for failing to state a claim upon which relief could be granted. The grant of a motion to dismiss pursuant to rule 12(b)(6) is a question of law that we review for correctness, affording the trial court's decision no deference. *See Anderson Dev. Co. v. Tobias,* 2005 UT 36, ¶53, 116 P.3d 323 (citing *St. Benedict's Dev. Co. v. St. Benedict's Hosp.,* 811 P.2d 194, 196 (Utah 1991)).

¶7 Second, Plaintiffs contend that the trial court erred in failing to grant them leave to amend their complaint. "We will not disturb a trial court's ruling on a motion to amend a complaint absent a clear abuse of discretion." *Neztsosie v. Meyer,* 883 P.2d 920, 922 (Utah 1994). A trial court will be deemed to have abused its discretion where "'the decision exceeds the limits of reasonability.'" *Id.* (additional internal quotation marks omitted) (quoting *Crossland Sav. v. Hatch,* 877 P.2d 1241, 1243 (Utah 1994)).

¶8 Finally, Plaintiffs claim that the trial court erred in certifying the Order as a final, appealable order pursuant to rule 54(b). The propriety of a trial court's determination that an order is amenable to rule 54(b) certification is a question of law that we review for correctness. *See Kennecott Corp. v. Utah State Tax Comm'n,* 814 P.2d 1099, 1100 (Utah 1991). The related question of wheth-

er there is no just reason for delay is reviewed for an abuse of discretion. *Cf. Pate v. Marathon Steel Co.,* 692 P.2d 765, 767 (Utah 1984). We address the certification argument first because it has jurisdictional implications. *See* Utah R.App. P. 3(a); *Bradbury v. Valencia,* 2000 UT 50, ¶9, 5 P.3d 649 (noting that an appeal is generally improper unless taken from a final judgment or order).

## ANALYSIS

### I. Rule 54(b) Certification

¶9 Plaintiffs argue that the trial court erred in certifying its dismissal of Defendants as a final, appealable order pursuant to rule 54(b) because the trial court did not enter findings supporting its certification until after the notice of appeal was filed. Plaintiffs do not, however, present any fully developed arguments that certification was substantively improper. As a result, we do not engage in an in-depth analysis of the substantive propriety of certification. *See e.g., Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998) (stating that appellate courts will generally not address an argument that is inadequately briefed); *see also Dimick v. OHC Liquidation Trust,* 2007 UT App 73, ¶5 n. 4, 157 P.3d 347 (stating that court would not address claim of error regarding a 54(b) certification when claim was withdrawn at oral argument).

¶10 After the trial court entered the Order, Defendants submitted Proposed Findings and Rationale for Certifying Order Dismissing Individual Defendants as Final Per Rule 54(b). Plaintiffs responded by filing a Notice of Objection to Defendants['] Proposed Findings and Rationale. This Notice did not specifically address the substance of the proposed findings and rationale, but requested an opportunity to file a responsive brief. About twelve days later, and before the trial court had responded to their objection, Plaintiffs filed their notice of appeal on January 8, 2007. On January 17, the trial court entered Findings and Rationale for Certifying Order Dismissing Individual De-

---

4. Plaintiffs raise additional claims of error, but our disposition of these three claims makes analysis of the others unnecessary.

fendants as Final Per Rule 54(b) (Findings and Rationale). Neither party filed motions to remand or to dismiss on the basis of lack of jurisdiction. In fact, Plaintiffs filed a motion to supplement the record on appeal with numerous documents filed in the trial court, including the trial court's Findings and Rationale regarding the 54(b) certification. Nonetheless, Plaintiffs now argue that certification was in error because the Findings and Rationale was not entered prior to the notice of appeal. Plaintiffs assert that the trial court lacked jurisdiction at that point. They further contend that certification was erroneous because Plaintiffs were not given an opportunity to brief their objections to the proposed findings and rationale.

¶ 11 We have previously noted that, as a general rule, "[a]n appeal is improper if it is taken from an order or judgment that is not final." *Bradbury*, 2000 UT 50, ¶ 9, 5 P.3d 649. However, rule 54(b) provides a limited exception to the final judgment rule. *See* Utah R. Civ. P. 54(b); *Bradbury*, 2000 UT 50, ¶ 12, 5 P.3d 649. In a case involving multiple parties and/or claims, rule 54(b) allows a trial court to certify as final "one or more but fewer than all of the claims or parties *only upon an express determination by the [trial] court that there is no just reason for delay and upon an express direction for the entry of judgment.*" Utah R. Civ. P. 54(b) (emphasis added).

¶ 12 The Utah Supreme Court discussed the intricacies and purposes of rule 54(b) certification in *Pate v. Marathon Steel Co.*, 692 P.2d 765 (Utah 1984), and *Kennecott Corp. v. Utah State Tax Commission*, 814 P.2d 1099 (Utah 1991). In *Pate*, the court identified three requirements for proper rule 54(b) certification as follows:

> First, there must be multiple claims for relief or multiple parties to the action. Second, the judgment appealed from must have been entered on an order that would be appealable but for the fact that other claims or parties remain in the action. Third, the trial court, in its discretion, must make a determination that there is no just reason for delay of the appeal.

*Pate*, 692 P.2d at 767 (internal quotation marks omitted).

¶ 13 In *Kennecott*, the supreme court explained that rule 54(b) "permits the trial court to certify certain interlocutory orders and, by so doing, force the appellate court to entertain the appeal." 814 P.2d at 1100. The court adopted an analytical framework to determine compliance with rule 54(b) that "focuses on the degree of factual overlap between the issue certified for appeal and the issues remaining in the district court." *Id.* at 1103 (internal quotation marks omitted). To further the goal of promoting the best use of appellate resources, the supreme court directed that the analysis should determine if basically the same operative facts affect both resolved and unresolved claims before the trial court. *See id.* If the operative facts are the same, certification is not proper. *See id.* at 1103–04.

¶ 14 The supreme court further refined the obligation of trial courts in rule 54(b) certifications in *Bennion v. Pennzoil Co.*, 826 P.2d 137 (1992) (per curiam). Utilizing the content of rule 52(a), which addresses the necessity of findings by trial courts in most instances, *see* Utah R. Civ. P. 52(a), the court held that "[i]n order to facilitate this court's review of judgments certified as final under rule 54(b), trial courts should henceforth enter findings supporting the conclusion that such orders are final." *Bennion*, 826 P.2d at 139. The *Bennion* court further stated that because the trial court's determination that there is no just reason to delay the case on appeal "is subject to judicial review under an abuse of discretion standard, a brief explanation should accompany all future certifications so that this court may render an informed decision on that question." *Id.* The supreme court did not state nor suggest that failure to enter findings is jurisdictional. That issue is indirectly addressed in a different context in two Utah appellate decisions.

¶ 15 In *Baker v. Western Surety Co.*, 757 P.2d 878 (Utah Ct.App.1988), this court was faced with a situation where the trial court granted a rule 60(b) motion to modify a judgment after a notice of appeal was filed. *See id.* at 878–79; *see also* Utah R. Civ. P. 60(b). The query then was whether the trial court had jurisdiction to consider the motion absent an order of remand from the court of

appeals. *See Baker*, 757 P.2d at 879. We adopted the majority position "that the trial court has jurisdiction to consider a 60(b) motion while an appeal is pending." *Id.* at 880. Notwithstanding that jurisdictional conclusion, we also stated that the parties should have obtained a remand order from this court, but failed to do so. Nonetheless, because "the parties followed a similar procedure with the identical substantive result," a remand was not then necessary. *Id.* at 881.

¶ 16 In *White v. State*, 795 P.2d 648 (Utah 1990) (per curiam), the Utah Supreme Court was confronted with similar facts when the defendant moved the trial court to amend or set aside a judgment under rule 60(b) after having filed a notice of appeal. *See id.* at 649. The trial court declined to consider the motion, reasoning that it lacked jurisdiction because of the pending appeal. *See id.* The supreme court noted that the general rule is that "an appeal divests the trial court of jurisdiction and transfers jurisdiction to the appellate court, where it remains until the appellate proceeding terminates and the trial court regains jurisdiction." *Id.* Nevertheless, the court noted that there are limited exceptions to the rule, created by the supreme court "in the interest of preventing unnecessary delay, where any action by the trial court is not likely to modify a party's rights with respect to the issues raised on appeal." *Id.* at 650. Examples noted by the court included motions to modify a divorce decree on the basis of a change in circumstances and rule 54(b) certifications, where "the trial court has jurisdiction to proceed with the claims remaining unadjudicated." *Id.* Under the facts presented in *White*, the court held that there was no need "to suspend [its] jurisdiction while the district court has the matter under consideration, as that will only delay proceedings." *Id.* Finally, the court denied the motion to remand and directed the trial court to resolve the 60(b) motion and notify the appellate court of its decision. *See id.; see also National Adver. Co. v. Murray City Corp.*, 2006 UT App 75, ¶¶ 22–23, 131 P.3d 872 (relying on *White* and *Baker*, rejecting "contention that the trial

court would have lacked jurisdiction to consider [the] rule 60(b) motion had they brought it after the appeal was filed").

¶ 17 We believe that the rationale of *Baker* and *White* applies in this case. Although an order of remand could have been sought, doing so at this point would merely further delay the case. The wastefulness of a remand is particularly apparent in this case because the trial court has already entered Findings and Rationale justifying the rule 54(b) certification. Consistent with prior case law, we therefore conclude that the trial court had jurisdiction to enter its Findings and Rationale after filing of the notice of appeal.[5]

¶ 18 Plaintiffs also complain that they did not have an opportunity to brief the trial court on their objections to the Findings and Rationale. We disagree. Rather than filing an objection to the proposed findings and rationale, Plaintiffs could have briefed the substantive issues. Instead, Plaintiffs only filed their notice of objection and then filed their appeal. Consistent with their arguments about jurisdiction, Plaintiffs could not then present their arguments about the proposed findings and rationale to the trial court. They could, however, have briefed the issue of the substantive sufficiency of the 54(b) certification on appeal. They chose not to do so. As a result, we are uninformed about what, if any, deficiencies Plaintiffs assert in the certification and will not speculate.

¶ 19 Moreover, as noted in *Kennecott*, appellate courts examine rule 54(b) certifications with care, to assure an appropriate use of appellate resources. *See* 814 P.2d 1099, 1103 (Utah 1991). Indeed, we do so sua sponte in some instances, to verify that the certification complies with rule 54(b) and cases decided thereunder. With that in mind, we have reviewed the trial court's order and the rather detailed Findings and Rationale. We hold that there was no error in the rule 54(b) certification and no abuse of discretion in the trial court's determination

---

**5.** Because the trial court had jurisdiction to enter its Findings and Rationale we need not address the impact of a failure to enter such findings.

that there was no just reason for delay. We therefore decline Plaintiffs' request for relief on this issue.[6]

## II. Rule 12(b)(6) Dismissal

■ ¶ 20 We turn now to Plaintiffs' primary argument on appeal, that the trial court incorrectly granted Defendants' rule 12(b)(6) motion to dismiss. Rule 12(b)(6) of the Utah Rules of Civil Procedure allows for a complaint to be dismissed where the pleadings "fail[ ] to state a claim upon which relief can be granted." Utah R. Civ. P. 12(b)(6). A rule 12(b)(6) motion to dismiss addresses only the sufficiency of the pleadings, and therefore, "is not an opportunity for the trial court to decide the merits of the case." *Tuttle v. Olds*, 2007 UT App 10, ¶ 14, 155 P.3d 893. Nevertheless, in deciding the propriety of a rule 12(b)(6) motion, trial courts are obliged to address the legal viability of a plaintiff's underlying claim as presented in the pleadings.

■ ¶ 21 In this case, Plaintiffs' central claim alleges negligence. To successfully bring a negligence claim, a plaintiff must establish, among other things, that the defendant owed a duty of care to the plaintiff. *See id.* Failure to show a duty is fatal to the negligence claim. *See id.; see also Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 12, 52 P.3d 1230. Thus, "[r]ule 12(b)(6) dismissals are proper . . . when the plaintiff has complained of negligence, but no factual situation could possibly create a legal duty of care between the defendant and plaintiff." *Tuttle*, 2007 UT App 10, ¶ 14, 155 P.3d 893. We will affirm the rule 12(b)(6) dismissal of a negligence claim "if 'it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of its claim[ ].'" *Id.* (quoting *Heiner v. S.J. Groves & Sons Co.*, 790 P.2d 107, 109 (Utah Ct.App.1990)).

¶ 22 The trial court granted Defendants' 12(b)(6) motion on the basis that Plaintiffs' complaint failed to state a claim for direct negligence or vicarious liability on the part of Defendants. Plaintiffs, of course, assert that

this was in error. Thus, we will address each of these liability theories.

■ ¶ 23 First, Plaintiffs' complaint alleges that Defendants were directly negligent, stating:

> [A]s members of [the] Club and as persons conducting, managing and overseeing the . . . Club event then ongoing, [Defendants] owed a duty to ShaRon Williams to exercise a reasonable lookout and reasonable care for persons present at and participating in the event, including without limitation a duty to observe the movement of vehicles at the event and to warn persons of the presence of moving motor vehicles.

This statement alleges direct liability premised on Defendants' acts (i.e., organizing the event) as well as Defendants' failure to act (i.e., not warning Mrs. Williams of the movement of vehicles). We address these theories in reverse order.

■ ¶ 24 As to Plaintiffs' claim of direct liability for Defendants' failure to act, Utah adheres to a fault-based negligence system and "[o]rdinarily, a party does not have an affirmative duty to care for another." *Beach v. University of Utah*, 726 P.2d 413, 415 (Utah 1986). An affirmative duty of care is only imposed where a "special relationship" exists between the plaintiff and the defendant. *See id.; Webb v. University of Utah*, 2005 UT 80, ¶ 15, 125 P.3d 906 (citing Restatement (Second) of Torts § 314A (1965)). While these types of special relationships can come about in many, varied contexts, they "generally arise when one assumes responsibility for another's safety or deprives another of his or her normal opportunities for self-protection." *Beach*, 726 P.2d at 415, 416 n. 2 (citing Restatement (Second) of Torts § 314A (1965)).

¶ 25 Plaintiffs' complaint includes no allegation to indicate that Defendants individually "assume[d] responsibility for [Mrs. Williams's] safety or" that she was, at any time, "deprive[d] . . . of . . . her normal opportunities for self protection." *See id.* at 415. Absent any allegation of a special rela-

---

6. Based on our conclusion that certification was proper, we need not address Defendants' alternative argument that we may assume jurisdiction for this appeal as an interlocutory order pursuant to rule 5(a) of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 5(a).

tionship in Plaintiffs' complaint, Plaintiffs' claim of direct negligence against Defendants for failure to act necessarily fails. *See Young*, 2002 UT 64, ¶ 12, 52 P.3d 1230.

¶ 26 As to Plaintiffs' allegation that Defendants' are directly liable for their actions in planning and overseeing the steak fry, we find the case law presented by both parties to be instructive. Defendants cite to *Thomas v. Dunne*, 131 Colo. 20, 279 P.2d 427 (1955)(en banc), as support for their argument that liability cannot be imposed upon an individual member of an unincorporated social club without active involvement in the commission of the tort. Plaintiffs, on the other hand, point to *Guyton v. Howard*, 525 So.2d 948 (Fla.Dist.Ct.App.1988), for the proposition that direct liability can be imposed upon individual members of an unincorporated social club even if they did not ultimately commit the tortious act, where they " 'set[ ] the proceedings in motion or agree[ ] to a course of action which culminates in wrongful conduct.' " *Id.* at 956 (quoting *Feldman v. North British & Mercantile Ins. Co.*, 137 F.2d 266, 268 (4th Cir.1943)). We do not see these cases as inconsistent with each other.

¶ 27 In *Thomas*, the Colorado Supreme Court, sitting en banc, held that members of an unincorporated association cannot be liable for injuries to a plaintiff incurred at a club sponsored event unless the complaint alleges "that any of the named defendants . . . committed the tort of which complaint is made." *Id.* at 430. The *Thomas* court further explained that liability can only be imposed upon an individual member of an unincorporated association if the complaint alleges that "that person . . . [is] actively connected with the commission of the negligent act." *Id.* at 432. Moreover, the *Thomas* court noted that dismissal of the individual members was proper where "[n]o such allegation can be found in the case at bar." *Id.*

¶ 28 In *Guyton*, several members of a local Shriner's temple, an unincorporated fraternal association, were assigned to plan and perform an admittedly dangerous initiation skit designed to test the initiate's composure. *See* 525 So.2d at 949, 953. During this skit-

aptly named the "Return of the Drunk"-one "temple member causes a disturbance, is ejected from the building, and returns with a firearm containing blank ammunition which is then discharged in a tussle with another temple member." *Id.* at 949 n. 2. When the gun discharged during an initiation, "a projectile from the shotgun struck Guyton in the left eye, causing the loss of the eye." *Id.* at 949. Each of the three individual defendants in *Guyton* had been involved to some degree in the preparation for and completion of the initiation skit and had at least a cursory understanding about what the skit would entail. *See id.* Before reversing and remanding the directed verdicts previously entered in favor of the three individual defendants, the *Guyton* court clarified that

> [t]he individual members of an unincorporated association are personally liable for tortious acts which they individually commit or participate in, or which they authorize, assent to, or ratify. . . . In other words, *the liability of a member of an unincorporated fraternal or social association is based upon his direct, active negligence,* whether it takes the form of an act or a failure to act. It is not a liability imputed to the member based solely on his relationship to an active tort-feasor. *It is not "vicarious liability."*

*Id.* at 956 (footnote omitted) (emphases added). Thus, similar to the court in *Thomas*, the *Guyton* court held that direct liability could be imposed on the three individual defendants only if a duty existed "arising out of the[individual defendants'] relationship to the [injured party] and their knowledge of the proceedings which resulted in [the] injuries," not "on the sole basis of their membership in the [association]." *Id.* at 957.

¶ 29 *Thomas* and *Guyton* each comport with the general rule in Utah tort law that there can be no liability without fault. *See* Utah Code Ann. § 78–27–40(1) (2002); *Hale v. Beckstead*, 2005 UT 24, ¶ 20, 116 P.3d 263 ("The amount the plaintiff can recover is proportionate to the percentage of fault attributed to the defendant."). We are also convinced that sound policy dictates against a rule to the contrary. Were we to hold otherwise and find that common membership

alone was sufficient to impose liability, the list of possible defendants would be so extensive as to necessarily include defendants who were without fault. For example, churchgoers might be vicariously liable for the tortious acts committed by their fellow congregants at a church service. Or, members of the Utah State Bar could potentially be legally responsible for the accidental injury suffered by one who attended a Bar-sponsored event. Results such as these would be contrary to Utah negligence law.

▉▉▉▉ ¶ 30 In adopting these rules, we hold that a member of an unincorporated association cannot be held vicariously liable for the negligent acts of a fellow member, and that direct liability can attach only upon a showing of active involvement in the commission of the tort. In this case, Plaintiffs allege nothing to indicate that Defendants were "actively [involved] with the commission of the [tort at issue]," *see Thomas,* 279 P.2d at 432, and assert that Defendants are liable solely "by virtue of their status as members of . . . and as recipients of the privileges and benefits of membership [in the Club]."[7] In fact, Plaintiffs allege that the only active involvement of Defendants was in "conducting, managing and overseeing" the steak fry. However, it was not these activities that injured Mrs. Williams, but the truck that ran over her. Wiggins was the only person who was alleged to have actually committed this tortious act. Furthermore, Plaintiffs have

alleged nothing to show the existence of a special relationship between Mrs. Williams and Defendants. Thus, we conclude that Plaintiffs failed to state a claim of negligence with respect to Defendants and affirm the trial court's dismissal of the same.[8]

### III. Leave to Amend

▉▉▉▉ ¶ 31 Finally, Plaintiffs argue that the trial court erred when, after dismissing Defendants, it failed to grant Plaintiffs leave to amend their complaint. In order to have an issue reviewed on appeal, the challenging party must point to record evidence to show that they preserved the issue in the trial court. *See* Utah R.App. P. 24(a)(5)(A). Moreover, the challenging party must show that they raised the issue "in a timely fashion . . . specifically . . . and supported by evidence or relevant legal authority." *Hatch v. Davis,* 2004 UT App 378, ¶ 56, 102 P.3d 774. This preservation rule is grounded in the policy that " 'trial court[s] ought to be given an opportunity to address a claimed error and, if appropriate, correct it.' " *State v. Holgate,* 2000 UT 74, ¶ 11, 10 P.3d 346 (quoting *State v. Eldredge,* 773 P.2d 29, 36 (Utah 1989)).

¶ 32 At the close of remarks during the hearing on Defendants' motion to dismiss, Plaintiffs' counsel enigmatically stated:

> In the worst case scenario today in which th[e] plaintiff[s'] allegations are unambiguously certain to be interpreted to include

---

7. In support of this assertion, Plaintiffs put forth a quasi-partnership argument to justify imposition of vicarious liability on Defendants. We have reviewed Plaintiffs' quasi-partnership argument and find it to be unavailing. Thus, we do not discuss further Plaintiffs' claim of vicarious liability based solely on Defendants' membership in the Club. *See State v. Allen,* 839 P.2d 291, 303 (Utah 1992) (noting that appellate courts may decline to analyze and address in writing every issue raised). Furthermore, Plaintiffs fail to differentiate between an association for business or profit, governed by partnership law, and a social or fraternal unincorporated association. *See Guyton v. Howard,* 525 So.2d 948, 956 (Fla.Dist. Ct.App.1988).

8. Plaintiffs also argue that the trial court considered facts outside of their complaint in dismissing Defendants, and, in doing so, should have converted Defendants' motion to dismiss into a motion for summary judgment. *See* Utah R. Civ. P. 12(b). Accordingly, Plaintiffs assert that the

trial court erred in not allowing them a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* We recognize that if a trial court considers " 'material outside the pleadings and fails to convert a rule 12(b)(6) motion to one for summary judgment, it is reversible error unless the dismissal can be justified without considering the outside documents.' " *Tuttle v. Olds,* 2007 UT App 10, ¶ 6, 155 P.3d 893 (quoting *Oakwood Vill., LLC v. Albertsons, Inc.,* 2004 UT 101, ¶ 12, 104 P.3d 1226). In the instant case, however, Defendants submitted no extraneous materials in support of the rule 12(b)(6) motion to dismiss and the motion to dismiss itself presented nothing outside of the pleadings. Furthermore, the trial court made it clear that it was not considering any information outside of the pleadings and entered no findings of fact when it issued its order granting the motion to dismiss. Therefore, we reject Plaintiffs' argument.

that individual participation among the members, the plaintiffs in the alternative request the Court to grant leave to amend to make those allegations certain and clear. That's all I have.

This is the only reference to a request for leave to amend that Plaintiffs made either in their response to Defendants' motion to dismiss or at the hearing on the same. Additionally, we find no record evidence to show that Plaintiffs provided the trial court with a sufficiently clear and unambiguous argument such that the trial court could have "address[ed the] claimed error and, if appropriate, correct[ed] it." *See id.* (internal quotation marks omitted). Furthermore, Plaintiffs have not explained how they could amend their complaint to state a viable claim against Defendants. *See Alvarez v. Galetka*, 933 P.2d 987, 991 (Utah 1997) (stating that, in the context of a 12(b)(6) dismissal, a request for leave to amend can properly be refused where "it appears to a certainty that [the] plaintiff cannot state a claim" (internal quotation marks omitted)). Thus, in light of Plaintiffs' failure to preserve their request for leave to amend, we do not address it on appeal.

## CONCLUSION

¶ 33 In sum, we determine that the trial court's certification was proper and that the trial court did not err in granting Defendants' motion to dismiss because Defendants did not owe a duty of care to Mrs. Williams. We further hold that there was no error in the trial court's failure to grant Plaintiffs leave to amend. Based on the foregoing, we affirm.

¶ 34 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, and CAROLYN B. McHUGH, Judge.