**2017 UT App 165**

## THE UTAH COURT OF APPEALS

GEORGE K. FADEL,
Appellant,
*v.*
DESERET FIRST CREDIT UNION,
Appellee.

Opinion
No. 20160070-CA
Filed August 31, 2017

Second District Court, Ogden Department
The Honorable Noel S. Hyde
No. 150906526

George K. Fadel, Appellant Pro Se

Wallace O. Felsted and Gregory S. Moesinger,
Attorneys for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and STEPHEN L. ROTH concurred.[1]

POHLMAN, Judge:

¶1    George K. Fadel appeals the district court's judgment entered in favor of Deseret First Credit Union (Deseret First). Fadel contends the court erred in dismissing his complaint that sought to foreclose an attorney's lien. We affirm.

---

1. Judge Stephen L. Roth participated in this case as a member of the Utah Court of Appeals. He retired from the court before this decision issued.

BACKGROUND

*The Underlying Lawsuit*

¶2 Jerry W. Parkin as successor trustee for the Wilma G. Parkin Family Protection Trust (the Trust) owned a piece of real property in Bountiful, Utah. Deseret First claimed an interest in the property and brought suit against the Trust to quiet title. The Trust hired Fadel to represent it in the litigation against Deseret First.

¶3 In the written attorney–client agreement between Fadel and the Trust, the Trust agreed to pay Fadel "one-half of the amounts recovered by settlement or judgment . . . in excess of $10,000." The fee agreement also provided that recovery in the form of property "could result in [Fadel] obtaining a joint interest in the land with [the Trust] after deducting $10,000."

¶4 Deseret First and the Trust entered into mediation. Fadel was present for a portion of the mediation but left before its conclusion. After Fadel left, Deseret First and the Trust entered into a settlement agreement pursuant to which the Trust agreed to convey the property to Deseret First by general warranty deed in exchange for a payment of $30,000. On that same day, Deseret First tendered, and the Trust accepted, the $30,000 payment, and Deseret First received the general warranty deed. The next day, October 21, 2011, Deseret First recorded the general warranty deed with the Davis County Recorder's Office.

¶5 Three days later, on October 24, 2011, Fadel recorded a notice of attorney's lien against the property with the Davis County Recorder's Office. He also filed the notice of lien with the district court the next day. In the notice, Fadel acknowledged that the Trust conveyed the deed to Deseret First before he recorded the notice of lien.

¶6 The Trust retained a new attorney who filed a substitution of counsel on behalf of the Trust, and Deseret First

and the Trust filed a stipulated motion to dismiss with prejudice. The district court, over Fadel's objection, entered an order dismissing the quiet title case.

¶7   After being replaced as counsel, Fadel nevertheless repeatedly filed motions and documents in the quiet title case purportedly on behalf of the Trust. In response, Deseret First moved to enforce the settlement agreement and for sanctions against Fadel, citing rule 11 of the Utah Rules of Civil Procedure and the court's inherent authority to regulate the conduct of attorneys. Deseret First also petitioned the court to nullify Fadel's attorney's lien and sought damages under the wrongful lien statute. Months later, Fadel filed a motion to intervene, which both Deseret First and the Trust opposed.

¶8   Judge David Hamilton, who was presiding over the case, ruled in favor of Deseret First in most respects. First, Judge Hamilton ruled that the Trust and Deseret First had resolved their dispute, that the settlement agreement was valid and enforceable, and that Fadel had no basis to submit pleadings on the Trust's behalf. Second, Judge Hamilton imposed sanctions, including an award of attorney fees, against Fadel. The sanctions were warranted, the judge explained, because Fadel had "repeatedly attempted to represent the Trust in filing motions, and he [had] repeatedly taken positions that [were] frivolous, meritless, and inconsistent" with the district court's rulings. Fadel had also attempted to pursue, on behalf of himself and the Trust, claims against Deseret First "that, if at all, belonged to the Trust but that were resolved and released under the Settlement Agreement." Third, Judge Hamilton ruled that Fadel's notice of attorney's lien was void ab initio. He explained that, although Fadel was entitled to an attorney's lien pursuant to statute, the notice of lien that Fadel recorded with the county on October 24, 2011, was "plagued by errors and failed to comply with statutory requirements." Judge Hamilton ultimately denied Deseret First's request for damages, however, because he determined that Fadel's attorney's lien itself was not wrongful as defined under the wrongful lien statute. Fourth, because Fadel

filed his motion to intervene after the quiet title case had been dismissed with prejudice, Judge Hamilton denied the motion as untimely. Fadel appealed, and this court affirmed the district court's decisions. *See Deseret First Fed. Credit Union v. Parkin*, 2014 UT App 267, ¶¶ 1, 22, 339 P.3d 471.

*The Present Lawsuit*

¶9      After the quiet title case concluded, Fadel filed the present action against Deseret First. In his complaint, Fadel alleged that Deseret First took title to the property subject to his attorney's lien. He cited his attorney fee agreement with the Trust and relied on Judge Hamilton's statement in the prior case that Fadel was entitled to an attorney's lien.[2] In terms of relief, Fadel sought to foreclose his attorney's lien and sought an interest in the property as well as a portion of the rents on the property.

¶10     Deseret First moved to dismiss, asserting that Fadel's complaint was "attempting to enforce and foreclose a Notice of Attorney's Lien that was previously invalidated, voided, and struck by Judge Hamilton" in the quiet title case. According to Deseret First, when it recorded the general warranty deed, "Fadel had neither asserted nor perfected his attorneys' lien for any unpaid compensation." It asserted that Fadel thus had "no pending lien against Deseret First's real property" and that because the property had "already been conveyed by the former client to Deseret First," Fadel could not "create a new lien" on the property. Deseret First also argued, among other things, that res judicata barred Fadel's claims because they had previously been adjudicated. Deseret First requested sanctions, including an award of attorney fees pursuant to the court's inherent authority and the bad faith attorney fees statute.

---

2. Fadel's complaint did not acknowledge that Judge Hamilton had concluded that the notice of attorney's lien was void ab initio.

¶11    In response, Fadel contended that the invalidity of the notice of lien "[did] not affect the validity of the lien" itself and was also insignificant because Deseret First had actual notice of his lien. He further contended that his "attorney's lien itself was not wrongful" under the definition in the wrongful lien statute because it was "expressly authorized" under the attorney's lien statute. Moreover, Fadel contended his suit could proceed because "[t]he issue of [his] entitlement to a lien for services rendered and costs advanced ha[d] not been litigated." According to Fadel, he was filing a separate legal action to foreclose the lien because he had been denied intervention in the quiet title case.

¶12    Judge Noel Hyde, presiding over this action, granted Deseret First's motion to dismiss. In so ruling, the district court accepted the complaint's factual allegations as true, reviewed the record in the quiet title case, and considered other undisputed facts outside the complaint. The court first noted that questions relating to the quiet title case, "including as to its propriety, underpinnings of the settlement, and the events relating to the mediation," had already been adjudicated and that Fadel could not collaterally attack the final determination in the quiet title case in the present action. It then declared that Fadel's claim to a portion of the property's rents amounted to an attempt by Fadel to assert a claim on the Trust's behalf, but because the Trust was Fadel's former client, Fadel was "not in the position to assert any claim for the Trust." Moreover, Fadel's inability to assert claims that belonged to the Trust had been decided in the quiet title case and was barred by res judicata.

¶13    The court explained that the only issue before it was the attorney's lien asserted by Fadel against Deseret First and the property. Viewing the undisputed facts in the light most favorable to Fadel, the court ruled that, as a matter of law, "Fadel ha[d] no lien on Deseret First's real property on which he could foreclose." The court determined that an attorney's lien may attach only to a client's property and that an attorney's lien on real property has its priority based upon when it is filed or

recorded with the county recorder. The court reasoned that Deseret First was never Fadel's client and "Fadel's attorney's lien in this case is not enforceable at law because it did not attach with any priority to the real property before the Trust conveyed the real property to Deseret First." The court thus concluded that Fadel's complaint failed to set forth a valid legal basis upon which a claim could be maintained against Deseret First. Accordingly, it dismissed Fadel's complaint on the merits with prejudice.

¶14 In addition, the court determined that Fadel's claims were "without merit" and "were not brought or asserted in good faith." It specifically found that Fadel's assertion of claims belonging to the Trust was not in good faith because his right to do so had already been resolved against him in the quiet title case, something of which Fadel was well aware. As a result, the court awarded $2,000 in attorney fees to Deseret First under the bad faith attorney fees statute. Fadel appeals.

ISSUES AND STANDARDS OF REVIEW

¶15 Fadel raises two principal issues on appeal. First, Fadel contends that the district court erred in dismissing his complaint. "The grant of a motion to dismiss pursuant to rule 12(b)(6) is a question of law that we review for correctness, affording the trial court's decision no deference." *Williams v. Bench*, 2008 UT App 306, ¶ 6, 193 P.3d 640. Because the court considered undisputed facts outside of Fadel's complaint, the court effectively treated Deseret First's motion to dismiss as a motion for summary judgment under rule 56 of the Utah Rules of Civil Procedure. Utah R. Civ. P. 12(b). Summary judgment is appropriate only "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* R. 56(a). We review a "court's legal conclusions and ultimate grant or denial of summary judgment for correctness and view[] the facts and all reasonable inferences drawn therefrom in the light most

favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

¶16   Second, Fadel challenges the district court's award of attorney fees to Deseret First under the bad faith attorney fees statute. "We review a trial court's grant of attorney fees under [the bad faith statute] as a mixed question of law and fact." *Verdi Energy Group, Inc. v. Nelson*, 2014 UT App 101, ¶ 13, 326 P.3d 104 (alteration in original) (citation and internal quotation marks omitted). "A finding of bad faith is a question of fact and is reviewed by this court under the 'clearly erroneous' standard." *Jeschke v. Willis*, 811 P.2d 202, 204 (Utah Ct. App. 1991). "The 'without merit' determination is a question of law, and therefore we review it for correctness." *Id.* at 203.


ANALYSIS

I. Dismissal of Fadel's Complaint

¶17   Fadel challenges the dismissal of his complaint on three main grounds. First, he contends that the district court erred in deciding the issues as a matter of summary judgment. Second, he contends that the district court erred in concluding that two particular facts were undisputed. Third, he contends that the district court erred in dismissing the case on its merits.

¶18   Fadel first contends that the district court "erred in deciding the issues as a summary judgment matter, where the only pleading on record was the complaint." According to Fadel, "[i]t is only in connection with a motion for judgment on the pleadings that the court can treat the motion as one for summary judgment pursuant to rule 56."

¶19   Fadel's position is directly contradicted by the plain language of rule 12 of the Utah Rules of Civil Procedure. Rule 12, which governs motions to dismiss, provides that if, "on a

motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Utah R. Civ. P. 12(b). Here, Deseret First moved to dismiss Fadel's complaint pursuant to rule 12(b)(6). Because Deseret First moved to dismiss for failure to state a claim upon which relief could be granted, *id.*, and because the district court considered additional items that were not set forth in the complaint, the court did not err in treating Deseret First's motion to dismiss as one for summary judgment under rule 56.[3]

¶20 Second, Fadel contends that the district court erred in stating that it was undisputed that there was a mediation between the Trust and Deseret First, and that a settlement flowed from that mediation. Specifically, he argues that he "clearly disputed . . . that no mediation agreement was prepared, approved or filed by the mediator or Fadel." Thus, Fadel reasons, the settlement agreement "should not be interpreted as being a mediated agreement."

¶21 This argument fails because it is a collateral attack on the validity and enforceability of the settlement agreement, issues conclusively resolved by Judge Hamilton in the quiet title case. *See State v. Nicholls*, 2017 UT App 60, ¶ 44, 397 P.3d 709 ("A

---

3. Fadel also suggests that he was not given a reasonable opportunity to present all pertinent material, citing the district court's decision to limit the length of oral argument. *See* Utah R. Civ. P. 12(b) (providing that when a motion to dismiss is treated as one for summary judgment, "all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56"). But Fadel has not identified any pertinent argument or material that he was prevented from presenting to the district court, and thus has failed to carry his burden of persuasion on appeal. *See id.* R. 61.

collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against." (citation and internal quotation marks omitted)). Thus, we agree with the district court's assessment that although "Fadel does not agree with Deseret First's and the Trust's settlement," the settlement agreement's enforceability is not a proper subject of the present action. *See id.* ("The general rule of law is that a judgment may not be drawn in question in a collateral proceeding . . . ." (omission in original) (citation and internal quotation marks omitted)).

¶22   As his third argument, Fadel contends that the district court erred in dismissing his complaint on the merits, asserting that Deseret First's recording of the general warranty deed did not take priority over his attorney's lien. He also asserts that because Deseret First had actual notice of his attorney's lien, his lien should be enforceable against Deseret First.

¶23   Utah Code section 38-2-7 governs attorney's liens. An attorney's lien under section 38-2-7 "is purely a creature of statute." *Phillips v. Smith*, 768 P.2d 449, 452 (Utah 1989) (citing an earlier version of the attorney's lien statute). The statute states, "An attorney shall have a lien for the balance of compensation due from a client on any money or property *owned by the client* that is the subject of or connected with work performed for the client," including, "any real, personal, or intangible property" and "any settlement . . . in the client's favor in any matter or action in which the attorney assisted." Utah Code Ann. § 38-2-7(2) (LexisNexis Supp. 2016) (emphasis added).[4] "An attorney's lien commences at the time of employment of the attorney by the

---

4. Although the attorney's lien statute has been amended since the time Fadel filed his notice of lien, we rely on the relevant portions of the current version of the statute because recent amendments do not alter our analysis.

client," and the attorney may enforce the lien by "moving to intervene in a pending legal action . . . in which the attorney has assisted or performed work" or "by filing a separate legal action." *Id.* § 38-2-7(3), (4). If real property is the subject of a lien, an attorney may file a notice of lien in the pending legal action or "with the county recorder of the county in which [the] real property . . . is located." *Id.* § 38-2-7(5).

¶24    The priority of the attorney's lien in relation to a person who takes an interest in property that is subject to an attorney's lien differs depending on what type of property is involved. With respect to property *other than real property*, "[a]ny person who takes an interest in any property . . . that is subject to an attorney's lien with actual or constructive knowledge of the attorney's lien, takes the interest subject to the attorney's lien." *Id.* § 38-2-7(8). But with respect to real property, an "attorney's lien on real property has as its priority the date and time when a notice of lien is filed with the county recorder of the county in which [the] real property that is subject to a lien . . . is located." *Id.* § 38-2-7(9). In other words, to perfect an attorney's lien against a client's *real property* and hold priority over others who later take an interest in that property, the attorney must record the notice of lien with the county recorder. *See id.*

¶25    In this case, Fadel asserted his right to foreclose the attorney's lien as against Deseret First. This assertion depends on the validity of Fadel's contention that Deseret First took title to the property subject to his attorney's lien. The district court rejected this notion. It specifically concluded that Fadel's attorney's lien "is not enforceable at law because it did not attach with any priority to the real property before the Trust conveyed the real property to Deseret First." As a result, the court concluded that Fadel's complaint failed to set forth a valid legal basis upon which a claim could be maintained against Deseret First.

¶26    Fadel contends that his attorney's lien attached to the property and held priority over Deseret First's recording of the

general warranty deed. But this contention is not supported by the law for two reasons. First, "[a]n attorney's lien on real property has as its priority the date and time when a notice of lien is filed with the county recorder of the county in which [the] real property that is subject to a lien . . . is located." *Id.* It is undisputed that Fadel recorded notice of his attorney's lien three days *after* Deseret First recorded the general warranty deed. Consequently, Fadel's attorney's lien did not attach to the property and Fadel could not, as a matter of law, hold a superior interest in the property over Deseret First.

¶27 Fadel nevertheless suggests that his attorney's lien on the property was enforceable because Deseret First had actual notice of his lien. This argument is misplaced. Even if Deseret First had actual notice of Fadel's lien, a person's actual or constructive knowledge of an attorney's lien is relevant under the attorney's lien statute only when the person "takes an interest in any property, *other than real property*, that is subject to an attorney's lien." *Id.* § 38-2-7(8) (emphasis added). Because the issue in this case is whether Fadel held a valid attorney's lien attached to real property, the relevant question is whether Fadel recorded a notice of lien before Deseret First recorded the general warranty deed. *See id.* § 38-2-7(9). Fadel did not. Therefore, his attorney's lien could not serve as a basis for a preexisting, and thus superior, interest in the property.

¶28 And, second, once the Trust conveyed the property to Deseret First, Fadel could no longer establish a valid attorney's lien on the property. Section 38-2-7 allows an attorney to hold "a lien for the balance of compensation due from a client on any money or property *owned by the client*," including, any real property. *Id.* § 38-2-7(2) (emphasis added). Once the Trust transferred the property to Deseret First, the property was no longer owned by Fadel's former client, the Trust. Thus, the attorney's lien statute does not authorize Fadel to lien or encumber the property because it is no longer "property owned by [his former] client." *See id.*; *cf. Capital Assets Fin. Services v. Lindsay*, 956 P.2d 1090, 1095 (Utah Ct. App. 1998) (stating that "a

judgment lien cannot attach to a debtor's real property if the property has already been sold, conveyed, or quitclaimed—even if the judgment lien is recorded first—because there is no 'interest' to which the lien can attach"), *aff'd sub nom. Capital Assets Fin. Services v. Maxwell*, 2000 UT 9, 994 P.2d 201.

¶29    In sum, because Fadel filed his notice of attorney's lien after Deseret First recorded its deed and, alternatively, because Fadel's former client no longer owned the property, we conclude that the district court correctly determined that Fadel's attorney's lien "is not enforceable at law because it did not attach with any priority to the real property before the Trust conveyed the real property to Deseret First."[5] The district court also correctly concluded that Fadel's complaint, seeking to foreclose the attorney's lien, failed to set forth a valid legal basis upon which a claim may be maintained against Deseret First. We therefore affirm the dismissal of Fadel's complaint.

## II. Attorney Fees Under Utah Code Section 78B-5-825

¶30    Next, Fadel challenges the district court's award of attorney fees to Deseret First pursuant to Utah Code section 78B-5-825. Section 78B-5-825, the bad faith attorney fees statute, provides that "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012). To award fees pursuant to this section,

---

5. To the extent Fadel raises other arguments challenging the dismissal of his complaint, those arguments are not adequately briefed and he has failed to meet his burden of demonstrating error. *See* Utah R. App. P. 24(a)(9); *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 ("[A]n appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal." (citation and internal quotation marks omitted)).

"a trial court must determine *both* that the losing party's action or defense was 'without merit' *and* that it was brought or asserted in bad faith." *Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶ 7, 122 P.3d 556. Fadel attacks both determinations supporting the attorney fees award against him.

A.     Without Merit

¶31    Fadel asserts that the district court erred in concluding that his complaint was without merit. In particular, he seems to argue that his claims had merit because "[t]here has yet to be an appellate decision construing application of [section 38-2-7] to a person having actual notice of the lien claim, and if priority is determined, to what extent is that priority." He also asserts that with respect to his claim for rent,[6] "[n]o priority exists to defeat the lien claim for that personal property."

¶32    "To determine whether a claim is without merit, we look to whether it was frivolous or of little weight or importance having no basis in law or fact." *Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 31, 347 P.3d 394 (citation and internal quotation marks omitted). This court has recently explained that "the bare existence of a basis in law for a potential claim is not sufficient to make a claim meritorious." *Bresee v. Barton*, 2016 UT App 220, ¶ 49, 387 P.3d 536. "Rather, there must also be a factual basis for a party's claims apart from a statutory provision that provides a theoretical 'basis in law' for those claims." *Id.* (citation omitted).

---

6. As noted above, *supra* ¶ 12, Fadel's complaint sought an interest in the property and a portion of the rents on the property. The district court determined that this was an "attempt[] to assert a claim on behalf of the Trust, by suggesting that the Trust has an enforceable claim for rentals against Deseret First." The court ruled, like Judge Hamilton did in the quiet title case, that Fadel was "legally incapable of asserting claims on behalf of the Trust or that belong to the Trust."

¶33    The district court concluded that Fadel's claims were "without merit, based upon the legal determinations made in this case." Fadel has not shown error in this assessment. The fact that an appellate court has not specifically addressed the statutory interpretation he advances does not render his claim meritorious. Fadel made no credible argument that, under section 38-2-7, Deseret First took title to the property subject to his attorney's lien. Similarly, Fadel did not establish a factual basis for his claims, given that he filed his notice of attorney's lien *after* his former client transferred the real property at issue. This same flaw was identified during the quiet title case; Judge Hamilton ruled that Fadel's notice of lien was void ab initio due to its "errors and fail[ure] to comply with statutory requirements." As for his claim seeking rents, Fadel maintains that his claim had merit. But any such claim was the Trust's to assert, and Fadel has not shown a basis in law or fact for him to assert a claim that the Trust effectively relinquished in the settlement. Accordingly, the district court did not err in determining that Fadel's complaint was without merit.

B.    Bad Faith

¶34    Fadel asserts that the district court erred in finding that he did not bring his claims in good faith. In particular, he argues that "the district court made no determination that Fadel had no honest belief in his claim."

¶35    For a district court to determine that an action was brought in bad faith, "it must find that the plaintiff (1) [lacked a]n honest belief in the propriety of the activities in question; (2) . . . inten[ded] to take unconscionable advantage of others; [or] (3) [had] intent to, or knowledge of the fact that the activities in question will . . . hinder, delay or defraud others." *Verdi Energy Group, Inc. v. Nelson*, 2014 UT App 101, ¶ 30, 326 P.3d 104 (alterations and omissions in original) (citation and internal quotation marks omitted). On appeal, a "trial court's finding of bad faith may be upheld despite a party's claim that he or she held a subjectively reasonable or honest belief in the propriety of

the claims and defenses that the party raised during the course of a case." *Bresee*, 2016 UT App 220, ¶ 56. Indeed, this court will affirm a finding of bad faith "when there is sufficient evidence in the record to support a finding that at least one of the[] three factors applies." *Blum v. Dahl*, 2012 UT App 198, ¶ 9, 283 P.3d 963 (citation and internal quotation marks omitted).

¶36 In this case, the district court found that Fadel's claims were not brought in good faith. As one example, the court determined that Fadel's claim for rentals was a claim that belonged to the Trust and "could not be brought in good faith, because of the rulings and orders" in the quiet title case that precluded Fadel from asserting or maintaining such claims. The court further found that Fadel was "aware of those limitations and restrictions" and that "to assert a claim in the face of those rulings and orders, which have been repeatedly stated and affirmed on appeal, does not and cannot constitute a good faith basis for the pursuit of those claims."

¶37 Fadel has not shown that the district court's bad-faith finding was clearly erroneous. With regard to his claim for rentals, Fadel asserts that "[e]ven if an allegation of the Complaint could be interpreted as 'assertions of claims purported to be claims of the Trust . . . ,' this does not prove that such assertion is dishonest, where there was no evidence that Fadel lacked an honest belief in the Trust's claim for rentals."[7] But Fadel does not address the fact that he lacked authority to assert claims on the Trust's behalf. Even if Fadel honestly

---

7. Fadel argues in passing that "[t]he court should have specified which parts of the Complaint were not brought in good faith and which were brought in good faith." But because he has not adequately supported and briefed this argument, he has not carried his burden of persuasion on appeal. *See* Utah R. App. P. 24(a)(9) (requiring appellants to provide reasoned legal argument, "with citations to the authorities, statutes, and parts of the record relied on"); *Bank of Am.*, 2017 UT 2, ¶ 12.

believed that the Trust had a claim for rentals, Fadel could not, in good faith, continue to represent the Trust's interests in the present action, given the district court's finding that Fadel was aware that his attempts to represent the Trust post-settlement had been repeatedly rejected in the quiet title case. *Cf. Bresee v. Barton*, 2016 UT App 220, ¶ 61, 387 P.3d 536 (affirming the district court's bad-faith finding where, when they initiated the lawsuit, the appellants "could not have had an honest belief" that they had a legal basis for pursuing litigation (citation and internal quotation marks omitted)). Accordingly, we affirm the district court's bad-faith finding and its award of attorney fees pursuant to the bad faith attorney fees statute.

## III. Attorney Fees on Appeal

¶38    Finally, Deseret First seeks an award of the attorney fees it incurred on appeal in defending the district court's decision. Generally, "[w]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Austin v. Bingham*, 2014 UT App 15, ¶ 33, 319 P.3d 738 (citation and internal quotation marks omitted). This rule applies "when the basis for attorney fees in the trial court is the bad faith statute." *Id.*; *see also Bresee*, 2016 UT App 220, ¶ 66 ("We award the Bartons their fees incurred for defending the [pertinent motion] on appeal because they were awarded fees under the bad-faith attorney fee statute on that issue below and have prevailed on that issue on appeal."). Deseret First has successfully defended the district court's dismissal of Fadel's complaint and the district court's award of attorney fees pursuant to the bad faith attorney fees statute, and we therefore grant its request for an award of the attorney fees incurred on appeal.[8]

---

8. Deseret First also asserts that it is entitled to attorney fees pursuant to rule 33 of the Utah Rules of Appellate Procedure, but because we grant fees on another basis, we need not consider whether rule 33 would merit such an award.

CONCLUSION

¶39 We affirm the district court's dismissal of Fadel's complaint because, as a matter of law, Fadel is not entitled to foreclose his attorney's lien against Deseret First's real property. We remand the matter to the district court for the limited purpose of calculating the reasonable attorney fees that Deseret First incurred on appeal.

———————