**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert G. JOHNSON, Defendant and Appellant.**

**No. 900598–CA.**

Court of Appeals of Utah.

Dec. 19, 1991.

---

Michael F. Olmstead (argued), Ogden, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen. and Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and RUSSON, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Robert G. Johnson appeals his conviction of six felony counts of securities fraud in violation of Utah Code Ann. §§ 61–1–1(2) and 61–1–21 (1989), six felony counts of sale of unregistered securities in violation of Utah Code Ann. §§ 61–1–7 and 61–1–21 (1989), and one felony count of employing an unregistered securities agent in violation of Utah Code Ann. §§ 61–1–3(2) and 61–1–21 (1989). He appeals on the basis that he was denied effective assist-ance of counsel at trial. We reverse and remand.[1]

## BACKGROUND

As a result of a criminal investigation by the Utah Attorney General's Office, defendant was arrested and charged by information with thirteen felony counts of securities violations. He retained attorney Joseph Bottum to represent him. Pursuant to its investigation, the State had reason to believe that Bottum had substantial knowledge of and had participated in one of the transactions which formed the basis of the charges against defendant. The State anticipated presenting evidence in that regard at trial, including possibly calling Bottum as a witness. The State filed a pretrial motion informing the court of the possible conflict of interest between defendant and Bottum. In its motion, the State requested that the court order Bottum and defendant to state on the record the nature and extent of the conflict and to explain to defendant the potential effect on his defense if Bottum were called to testify at trial. The State moved the court to either allow defendant to waive the conflict or to disqualify Bottum from further representing defendant.

The State attached to its motion an affidavit of Ed Morin, an investigator with the Utah Division of Securities, who had investigated the transactions that resulted in defendant's charges. The affidavit contained the following statements. Morin had obtained evidence that Bottum knew about and participated in the planning of the investment program in question. Bottum received cash from defendant to purchase stock or an interest in a company that was to be merged with another company and sold. The transaction would provide profits to the participants, including Bottum, defendant, the investors, and others. When Bottum was unable to complete the transaction, he returned over $50,000 in cash, which defendant had collected, to defendant for further use in the scheme. Morin also stated that the State alleged that

---

**1.** Defendant also raises other issues on appeal which we do not reach because of our resolu-tion of his ineffective assistance of counsel claim.

the completed transaction constituted the sale of unregistered securities and that fraudulent and false statements were made in connection with the sale of the investment. In its accompanying memorandum, the State said it planned to present this evidence at trial.

The court held a hearing on the State's motion. At the hearing, Bottum represented to the court that he had no knowledge of or involvement in the transactions. He stated that he "had nothing to do with [the sale of securities]," and that he knew of no reason why he would be called to testify. The State discussed the information it had showing that Bottum was involved. The State indicated Bottum would not be called as a witness by the prosecution, but that other witnesses would testify about Bottum's involvement. Bottum, however, repeatedly contended that he "was at a loss to understand what they're talking about." He stated that if the State were correct, there would be "a tremendous problem for [his] client," but if such evidence were presented at trial, defendant could rebut all of it and exonerate Bottum through his testimony. After being informed that evidence might be introduced at trial implicating Bottum, and that Bottum would not be able to take the stand to refute it, defendant told the court he still wished to have Bottum represent him.

At trial, the State's chief prosecution witness was Blake Adams. Adams had originally been charged as a co-defendant with defendant but had pleaded guilty. Adams testified that defendant introduced him to Bottum and that the three of them formed a partnership. He testified that he and defendant met with Bottum in Bottum's law office where Bottum told them he knew of a company which could be purchased through stock acquisition and then merged with another company. Bottum told them he had access to the company or an individual who controlled the company. Bottum offered to take care of the filings and have the stock traded properly. Defendant and Adams were to raise the money. Bottum, defendant and Adams would split the proceeds in thirds. Adams further testified that as part of the deal, they used funds from their partnership in the form of a check made out to Joseph Bottum Trust Account. Adams testified that the scheme "was a [defendant], Adams and Bottum thing." In his closing argument, the prosecutor recounted Adams's testimony about Bottum's involvement.

On appeal defendant argues that he was denied effective assistance of counsel in violation of the Sixth Amendment due to a conflict of interest between him and his attorney. He argues that his waiver during the pretrial hearing is invalid because a defendant, as a matter of law, cannot waive such a conflict.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ While ordinarily a claim of ineffective assistance of counsel must be addressed by collateral attack through habeas corpus proceedings, in limited circumstances, the claim may be raised on direct appeal. *State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991); *United States v. Swanson*, 943 F.2d 1070, 1072 (9th Cir. 1991); *United States v. Tatum*, 943 F.2d 370, 380 (4th Cir.1991); *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 133–34 (3d Cir.1984). Those circumstances exist when there is new counsel on appeal and there is an adequate trial record. *Zepp*, 748 F.2d at 133–34. We find both present in this case, and therefore proceed to consider the merits of defendant's claims.

An ineffective assistance of counsel claim is usually a mixed question of law and fact. *State v. Templin*, 805 P.2d 182, 186 (Utah 1990) (citing *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984)). Although there are no fact findings as to the ineffectiveness of counsel here, the record of what actually transpired allows us to determine on appeal, as a matter of law, whether defense counsel's performance constituted ineffective counsel. *Zepp*, 748 F.2d at 133–34.

■ The Sixth Amendment to the United States Constitution states: "In all criminal

prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right guarantees all criminal defendants the right to effective assistance of counsel, *Templin*, 805 P.2d at 186, and "includes the right to counsel free from conflicts of interest." *State v. Webb*, 790 P.2d 65, 72 (Utah App.1990) (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065).

■ The purpose of the right to effective assistance of counsel is to ensure that criminal defendants receive fair trials. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. While a defendant "should be afforded a fair opportunity" to hire the attorney of his or her choice, *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932), that right is not absolute. *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988); *United States v. Collins*, 920 F.2d 619, 625 (10th Cir.1990) *cert. denied*, — U.S. —, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991) (citing *United States v. Gipson*, 693 F.2d 109, 111 (10th Cir.1982) *cert. denied*, 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983)). The right to effective assistance of counsel seeks to "guarantee an effective advocate for each criminal defendant," *Wheat*, 108 S.Ct. at 1697, and is paramount to a defendant's right to be represented by an attorney of his or her choice. "Courts therefore must balance a defendant's constitutional right to retain counsel of his [or her] choice against the need to maintain the highest standards of professional responsibility, the public's confidence in the integrity of the judicial process and the orderly administration of justice." *Collins*, 920 F.2d at 626 (citations omitted).

The right to effective assistance of counsel is "so basic to a fair trial that [its] infraction can never be treated as harmless error." *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967)); *State v. Velarde*, 806 P.2d 1190, 1192 (Utah App.1991).

## Conflict of Interest

■ "[A] sixth amendment claim grounded on conflict of interest is a special subtype of an ineffectiveness claim" and must be analyzed under the following standard, which is different than that used for other ineffective assistance of counsel claims. *Velarde*, 806 P.2d at 1192; *Webb*, 790 P.2d at 72. A defendant who did not object to the conflict at trial has the burden on appeal of demonstrating with specificity that "an actual conflict of interest existed which adversely affected his [or her] lawyer's performance." *Webb*, 790 P.2d at 73 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980)); *Zepp*, 748 F.2d at 135–36 (citing *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981)). If the defendant makes such a showing, prejudice need not be demonstrated to prevail on the claim. *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1718–19; *Webb*, 790 P.2d at 73. The court will presume the defendant was prejudiced by the lawyer's performance. *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984); *Webb*, 790 P.2d at 73 (quoting *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067).

■ Utah appellate decisions have addressed counsel's conflict of interest only in the context of representation of multiple clients and a potential conflict of interest among those clients. No Utah cases have presented facts where, as here, the alleged conflict of interest is between the lawyer and the client. We therefore look to other jurisdictions to determine if an actual conflict of interest exists here, and if so, whether it adversely affected counsel's performance. We find *Zepp*, 748 F.2d 125, and *United States v. Hobson*, 672 F.2d 825 (11th Cir.) (per curiam), *cert. denied*, 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982), particularly helpful.

In *Zepp*, defendant was arrested and charged with possession of cocaine and destruction of evidence following a warrantless sweep search of her home. After the search, she was taken to police headquarters. The results from the search were negative. Later, defense counsel and

defendant went to defendant's residence and closed the front door. Moments later police officers heard a toilet flush several times. Three days later, the officers obtained a search warrant for the septic tank connected to the house. Forty plastic bags were found during the search, twenty of which tested positive for cocaine residue.

Defense counsel was called as a prosecution witness for the government at a pre-trial suppression hearing. He objected and thereafter entered into a stipulation with the government wherein he stated that he did not use any of the bathrooms while he was inside defendant's house. The stipulation was introduced into evidence at trial. On appeal, the court held that defendant's Sixth Amendment right to effective assistance of counsel was violated because her counsel faced potential criminal liability on the same charges for which she was being tried and because he acted as a prosecution witness. *Id.* at 136.

The court stated that "when defense counsel has independent personal information regarding the facts underlying his client's charges, and faces potential liability for those charges, he has an actual conflict of interest," which may likely impair his professional judgment. *Id.* In such a situation, a court cannot assume that a lawyer "vigorously pursued his client's best interest entirely free from the influence of his own concern to avoid his own incrimination." *Id.* The lawyer must either withdraw or be disqualified. *Id.*

Similarly, in *Hobson,* defendant appealed his conviction of drug trafficking on the ground that a conflict of interest between him and his attorney violated his Sixth Amendment right to effective assistance of counsel. The affidavits of two witnesses implicated defendant's attorney as a coconspirator in the transportation of marijuana from Panama to the United States. The court upheld the district court's disqualification of defense counsel because if the evidence indicating defense counsel's involvement in the crime were presented at

trial, defense counsel's credibility and integrity would be impugned, which would likely be detrimental to defendant. *Hobson,* 672 F.2d at 828–29.

■ *Zepp, Hobson* and other conflict of interest cases have also discussed ethical standards under the Rules of Professional Conduct.[2] While violation of the Rules does not "create any presumption that a legal duty has been breached" or provide a basis for civil liability, Scope, Utah R.Prof.Conduct, courts have referred to the Rules to augment legal principles involving lawyer conduct. The application of ethical standards to particular facts is a question of law. *See Hobson,* 672 F.2d at 828. Counsel's conduct may be examined in light of prevailing professional and ethical standards to determine whether defendant received effective representation. *Zepp,* 748 F.2d at 135.

Rule 1.7(b) of the Utah Rules of Professional Conduct states:

> A lawyer shall not represent a client if the representation of that client may be materially limited by ... the lawyer's own interest, unless: (1) The lawyer reasonably believes the representation will not be adversely affected; and (2) Each client consents after consultation.
>
> ....

Also, in order to continue representation under Rule 1.7(b), the client's representation must not appear to be adversely affected by the lawyer's other interests. Code Comparison, Utah R.Prof.Conduct 1.7. The Comment notes to this rule explain that where the "probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." Comment, Utah R.Prof.Conduct 1.7.

Utah Rule of Professional Conduct 8.4(d) addresses the institutional interest in ensuring that just verdicts are rendered in criminal cases—an interest that may be jeopardized by the existence of conflicts of interest. *Wheat,* 108 S.Ct. at 1697. Courts

---

**2.** The Utah Rules of Professional Conduct replaced the earlier Utah Canons of Professional Responsibility.

have an "interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* Rule 8.4(d) states: "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." When a lawyer engages in irresponsible or improper conduct, the public's confidence in the bar and in the legal process is eroded. *Hobson,* 672 F.2d at 828. This is especially true when a lawyer's integrity is impugned before a jury. *Id.* at 829.

In *Hobson,* the court articulated a two-pronged test for determining on appeal whether an attorney should have been disqualified from a case because of an appearance of impropriety. Although the test was based upon Canon Nine of the former Canons of Professional Responsibility, we find the test appropriate under the current Utah Rules of Professional Conduct. First, the court must find that there is "at least a reasonable possibility that some specifically identifiable impropriety" occurred because of the representation. *Id.* (quoting *Woods v. Covington County Bank,* 537 F.2d 804, 813 (5th Cir.1976)). There need not be proof of actual wrongdoing, however. *Id.* at 829. Second, the court must balance "the likelihood of public suspicion or obloquy" against the social interest in allowing the defendant to continue being represented by the lawyer of his or her choice. *Hobson,* 672 F.2d at 828 (quoting *Woods,* 537 F.2d at 813 n. 12). "[T]he interest in permitting a criminal defendant to retain counsel of his choice is strong and deserves great respect. The right to counsel of choice is not absolute, however, and must give way where its vindication would create a serious risk of undermining public confidence in the integrity of our legal system." *Hobson,* 672 F.2d at 828. An attorney should be disqualified if both prongs are satisfied. *Id.*[3]

In applying the foregoing principles to this case, we note that *Zepp* and *Hobson* present facts similar to those herein. Bottum was implicated as a coconspirator in Adams's testimony and in the prosecutor's closing argument. He had an interest in exonerating himself which was not consistent with defending his client. Also, Bottum's integrity and credibility as defense counsel, as well as personally, were eroded by the accusations, making him less effective in representing defendant. These facts demonstrate an actual conflict of interest between Bottum and defendant. The conflict clearly affected Bottum's performance as defense counsel. The effect of the conflict was evident in his questioning of Adams, his failure to call defendant as a witness, and his failure to object to comments of the prosecutor during closing argument. Ethical considerations also lead to the conclusion that an actual conflict of interest existed between Bottum and defendant and that he ought not to have acted as counsel. He had a personal interest in vindicating himself which was not consonant with the interests of his client. Implications that Bottum was a participant in illegal activities not only lessened his effectiveness as counsel for defendant, but also discredited the system under which defendant was tried. Because we find that there was an actual conflict of interest between Bottum and defendant and that the conflict affected Bottum's performance as counsel, we presume defendant was prejudiced thereby.

### Waiver

Defendant purportedly waived any potential conflict of interest during the pretrial proceeding. Defendant argues that his waiver is invalid because, as a matter of law, he is unable to waive such a conflict.

A defendant can generally waive his or her right to conflict-free counsel. *Hollo-*

---

**3.** It is also apparent that Bottum could have, and perhaps should have, been called as a witness. Utah Rule of Professional Conduct 3.7(a) states:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) The testimony relates to an uncontested issue; (2) The testimony relates to the nature and value of legal services rendered in the case; or (3) Disqualification of the lawyer would work substantial hardship on the client.

*way,* 435 U.S. at 483 n. 5, 98 S.Ct. at 1178 n. 5. To be valid, such a waiver must be knowing and intelligent, and made "only after adequate warning by the [trial] court of the potential hazards posed by the conflict of interest and of the accused's right to other counsel." *United States v. Rodriguez,* 929 F.2d 747, 750 (1st Cir.1991) (per curiam). The validity of a waiver depends upon whether the defendant knew enough about the possible consequences to make an informed choice. *United States v. Roth,* 860 F.2d 1382, 1387–88 (7th Cir.1988) *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989).

 Trial courts have the discretion to grant a waiver and are not expected to foresee all the possible events which may take place during trial. *See Roth,* 860 F.2d at 1387–89. Trial courts can refuse to accept a defendant's waiver where there is either an actual or a potential conflict of interest between defendant and counsel. *Wheat,* 108 S.Ct. at 1698–99. Trial courts have an "institutional interest in protecting the truth-seeking function of the proceedings over which [they are] presiding by considering whether [defendants have] effective assistance of counsel, regardless of any proffered waiver[s]." *United States v. Moscony,* 927 F.2d 742, 749 (3d Cir.) *cert. denied,* — U.S. ——, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991).

We are sensitive to the possibility that a defendant may seek a waiver and then try to use it to his or her advantage later. We do not condone such manipulation. In this case, however, Bottum's denial to the trial court during the pretrial hearing of any knowledge or involvement in the sale of securities was not borne out. Bottum said that he had not participated in the transactions and could refute any implications with defendant's testimony. At trial, however, prosecution witness Adams was adamant about Bottum's involvement. Bottum did not call defendant as a witness and therefore neither he nor any other witness was able to rebut this evidence. Defendant was advised during the pretrial hearing that Bottum would not be able to act both as counsel and as a witness, but was never told of the possible deleterious effects on the jury if his defense counsel were implicated in the same dealings constituting criminal activity as was he. Therefore, the waiver does not preclude defendant's ineffective assistance claim because it was based on representations contrary to what actually happened at trial and incomplete knowledge of the possible consequences. When the conduct occurred during trial, defendant was not then fully informed of the possible consequences and did not then have an opportunity to make a voluntary and informed waiver.[4] Therefore, the waiver was not valid and does not preclude defendant's claim of ineffective assistance of counsel.

## CONCLUSION

Defendant was denied his Sixth Amendment right to counsel because of the ineffectiveness of his counsel resulting from an actual conflict of interest. His pretrial waiver of any potential conflict did not extend to what occurred at trial when the actual conflict crystallized. We reverse and remand for a new trial.

GARFF and RUSSON, JJ., concur.

---

**4.** While we do not go so far, *Hobson* held a defendant may not waive a conflict of interest where "the ethical violation involves public perception of the lawyer and the legal system rather than some difficulty in the attorney's effective representation. . . ." 672 F.2d at 829.