**2019 UT App 97**

## THE UTAH COURT OF APPEALS

JANAE A. KIRKHAM,
Appellant,
*v.*
JAMIE WIDDISON, HRB TAX GROUP, GRACE HANSEN, BONNY
WIDDISON, AND ALPINE GARDENS INC.,
Appellees.

Opinion
No. 20170655-CA
Filed June 6, 2019

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 150902366

Janae A. Kirkham, Appellant Pro Se

Suzanne Marelius, Attorney for Appellees Jamie
Widdison and Bonny Widdison

Sean N. Egan, Anthony J. Durone, and Timothy
West, Attorneys for Appellees HRB Tax Group and
Grace Hansen

Jonathan O. Hafen and Jeffery A. Balls, Attorneys for
Appellee Alpine Gardens Inc.

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGE DIANA HAGEN concurred. JUDGE MICHELE M.
CHRISTIANSEN FORSTER concurred, except that as to section VI,
she concurred only in the result.

MORTENSEN, Judge:

¶1 Appellant Janae A. Kirkham appeals—for the fourth time[1]—issues arising from claims that she alleges occurred during the litigation of a petition to modify in a separate divorce proceeding. Kirkham argues that the trial court erred by (1) granting a rule 12(b)(6) motion to dismiss four of her claims, (2) granting a rule 12(c) judgment on the pleadings dismissing one of her claims, (3) dismissing her remaining claims on summary judgment, (4) granting a motion to disqualify her attorney, (5) granting a protective order under rule 37 of the Utah Rules of Civil Procedure, and (6) awarding attorney fees and costs pursuant to Utah Code section 78B-5-825. We affirm.

BACKGROUND

¶2 In 2011, Jamie Widdison sought a modification of his and Kirkham's divorce decree, which would, among other things, allow him to retroactively claim a tax exemption for the parties' minor child—whom Kirkham had previously claimed. During those proceedings, Kirkham produced copies of her tax returns for the years 2009, 2010, and 2011 (Tax Returns). According to Kirkham's second amended complaint (Complaint), Widdison and his wife Bonnie Widdison (collectively, Widdisons) received the Tax Returns from their attorney and used Alpine Gardens Inc.'s fax machine to send those copies to HRB Tax Group and its employee, Grace Hansen (collectively, HRB). HRB used the Tax Returns to prepare pro forma returns (Pro Forma Returns)[2]

---

1. *See generally Widdison v. Kirkham*, 2018 UT App 205, 437 P.3d 555 (appealing the remand trial regarding the 2012 modification order); *Kirkham v. McConkie*, 2018 UT App 100, 427 P.3d 444 (appealing the dismissal of her legal malpractice claim); *Widdison v. Widdison*, 2014 UT App 233, 336 P.3d 1106 (appealing the trial court's 2012 modification order).

2. Pro forma is defined as "made or carried out in a perfunctory manner or as a formality" or "based on financial assumptions or (continued…)

demonstrating the potential impact to Kirkham's tax liability without the child exemption. The Pro Forma Returns were offered as exhibits in hearings before a commissioner and the trial court.

¶3     Based on the Pro Forma Returns, the commissioner determined that the parties' collective tax liability would be lowered by allowing Widdison to claim the child exemption. Widdison proposed that if Kirkham filed the Pro Forma Returns, he would pay Kirkham the difference in any tax that would be assessed to her as a result. The commissioner, however, certified the issue to the trial court when Kirkham would not agree. The commissioner noted that Kirkham "had no explanation for her position, particularly where it would cost her nothing."

¶4     The trial court agreed with the commissioner that Widdison would realize a greater tax benefit from the exemption than Kirkham. On October 10, 2012, the trial court entered a written order authorizing Widdison to claim the child exemption for tax years 2009 through 2012. The court also ordered Kirkham to sign and file the Pro Forma Returns as well as IRS Form 8332, which authorized Widdison to claim the child exemption for those years (Amended Returns). Finally, the court ordered Widdison to reimburse Kirkham any difference in taxes owed by Kirkham as a result of filing the Amended Returns. Kirkham timely appealed the trial court's order.[3]

---

(…continued)

projections: such as . . . reflecting a transaction (such as a merger) or other development as if it had been or will be in effect for a past or future period." *Pro forma*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/pro%20forma [https://perma.cc/68K9-FQ3U].

3. Kirkham also brought numerous claims against the attorney who represented her from 2007 to 2012 for conduct related to the

(continued…)

¶5    While the modification appeal was pending, Kirkham refused to sign and file the Amended Returns.[4] On December 11, 2012, the commissioner held an order to show cause hearing and again ordered Kirkham to sign and file the Amended Returns. Kirkham, again, refused. On January 10, 2013, the commissioner ordered the clerk of the court to sign IRS Form 8332 on behalf of Kirkham[5]—effectively authorizing the Widdisons to file their amended returns with the child exemption.

¶6    On January 18, 2013, Kirkham's Amended Returns were filed and received by the IRS. Kirkham alleged in her Complaint that the "amended tax returns for the years 2009, 2010 and 2011 in [Kirkham's] name were filed by [the Widdisons] and HRB." However, Kirkham conceded two points. First, after HRB argued that it "did not and cannot file amended returns even if they are final" because "[a]mended returns cannot be filed electronically," Kirkham conceded that "[HRB] didn't file the amended returns." Second, when the court later asked Kirkham, "Who filed the returns?" Kirkham replied, "Widdison did." As discussed below, *infra* ¶ 13, Kirkham was ultimately unable to produce any evidence that Widdison, or any other defendant, filed the returns.

¶7    In October 2014, this court vacated the modification order and remanded with instructions to make additional findings on

---

(…continued)
modification proceeding. *See McConkie*, 2018 UT App 100, ¶ 2. Kirkham's claims were dismissed on summary judgment, and this court affirmed. *Id.* ¶ 1.

4. The record does not indicate that Kirkham moved to stay the modification while the appeal was pending.

5. The court clerk was authorized to sign IRS Form 8332 on behalf of Kirkham under rule 70 of the Utah Rules of Civil Procedure.

whether shifting the child exemption was justified. *See Widdison v. Widdison*, 2014 UT App 233, ¶ 21, 336 P.3d 1106. But prior to the remand trial, "the parties fully resolved all claims arising from their 2009, 2010 and 2011 tax returns," and therefore the court did not address that issue. On remand, the trial court reinstated the original modification order and found that the "allocation of tax dependent exemptions [was] consistent with Utah law . . . [and] the ruling was an equitable, fair and reasonable way to distribute the tax benefit in this case." The trial court found Kirkham in contempt of the 2012 modification order for refusing to sign and file the Amended Returns and for obstructing Widdison's ability to comply with the order by "frustrating [his] efforts to compensate her." The court also found that due to Kirkham's contempt, Widdison "had to file his amended tax returns on his own with an 8332 form in the absence of [Kirkham's] amended return being filed. This led to [Kirkham's] tax return for 2012 being seized. . . . [And] this [was] due to [Kirkham's] own lack of cooperation." Finally, the court awarded Widdison costs and attorney fees arising from Kirkham's contempt.[6]

¶8 Kirkham filed this lawsuit against the Widdisons, HRB, and Alpine (collectively, Appellees), alleging that Appellees' role in preparing the Pro Forma Returns and filing the Amended Returns gave rise to various claims. Specifically, Kirkham raised claims for tortious conversion against all Appellees (Claim 1); civil conspiracy against all Appellees (Claim 2); invasion of privacy against all Appellees (Claim 3); violation of the Utah Consumer Sales Practices Act (UCSPA) against HRB (Claim 4); violations of the UCSPA–Unconscionability against HRB (Claim 5); intentional infliction of emotional distress (IIED) against all

---

6. Kirkham again appealed, and this court affirmed. *See Widdison*, 2018 UT App 205, ¶ 18 (affirming the trial court, but remanding to recalculate attorney fees owed by Kirkham for the prior appeal and remand trial proceedings).

Appellees (Claim 6); and breach of fiduciary duty against HRB and Widdison (Claim 7).

¶9 During discovery, HRB moved to have Kirkham's attorney disqualified.[7] HRB argued that Kirkham's attorney had obtained employment with HRB without disclosing that he represented Kirkham, who intended to sue HRB. Further, HRB argued that Kirkham's attorney had taken at least one confidential document from HRB during his employment, which he intended to use in the suit against HRB. The trial court granted HRB's motion to disqualify, finding that (1) the "likelihood of public suspicion or obloquy outweighs the social interest in allowing [Kirkham's attorney] to continue to represent [her]"; (2) because Kirkham "has filed this action as a Tier 3 action and seeks extensive punitive damages," "it is likely that [she] will be able to obtain substitute counsel"; and (3) "the ongoing harm to public confidence and to [HRB] in allowing [Kirkham's attorney] to continue to represent [Kirkham] outweighs the minimal harm to [her] in having to obtain substitute counsel."

¶10 HRB also moved the trial court to enter a protective order governing discovery. Kirkham objected, but rather than offering any alternative language to the proposed protective order, she requested that the court not enter the order at all. The trial court rejected Kirkham's objection, finding that "the order has procedure in it for designating documents as well as objecting to designations" and that "the order as prepared is an ordinary and customary protective order in commercial cases."

¶11 Next, the Widdisons moved pursuant to rule 12(b)(6) to dismiss Claims 1, 2, 3, 6, and 7—or in other words, Kirkham's entire Complaint as against them. Simultaneously, HRB moved pursuant to rule 12(b)(6) to dismiss Claims 1, 3, 6, and 7. The trial

---

7. Kirkham's attorney was her father, Larry A. Kirkham.

court granted both motions, excepting Claim 2 against the Widdisons. In a seven page memorandum decision, the trial court made the following conclusions with respect to each dismissed claim:

- Claim 1 (Tortious Conversion)—that "intangible property such as knowledge of Kirkham's tax status is not property that can be converted"—and "[e]ven if such an intangible interest were subject to conversion . . . Kirkham was never deprived of its use."

- Claim 3 (Invasion of Privacy)—that "Kirkham's counsel made clear that this claim is brought based on misappropriation of name or likeness" and "[s]he alleges no 'intrinsic value' of her name" as required by Utah law. And Kirkham's argument that "every name has intrinsic value . . . is simply legally incorrect." (Cleaned up.)

- Claim 6 (IIED)—that the Widdisons' conduct and HRB's conduct, as alleged, does not, as a matter of law, constitute such extreme conduct to state a claim for IIED. Further, Kirkham's allegations show that she views "the modification proceeding as one long pattern of [IIED]"—and under Utah law, "[a]n allegation of improper filing of a lawsuit or the use of legal process against an individual is not redressable by a cause of action for [IIED]." (Citing *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 66, 70 P.3d 17.)

- Claim 7 (Breach of Fiduciary Duty)—that Widdison "is not a fiduciary for Kirkham . . . by

virtue of his status as a law enforcement officer."[8] And similarly, HRB, "by contracting with [Widdison] and or his attorney, did not become fiduciaries to Kirkham."

¶12 HRB then moved the trial court, pursuant to rule 12(c), to dismiss Claims 2 (Civil Conspiracy), 4 (Violation of UCSPA), and 5 (Violation of UCSPA–Unconscionability). At the hearing for this motion, HRB argued that it "did not and cannot file amended returns even if they are final," because "[a]mended returns cannot be filed electronically." Kirkham then conceded, "[HRB] didn't file the amended returns." The court granted the motion, finding that HRB did not violate "26 U.S.C. § 7216 or any other IRS regulation or tax law in preparing the [Pro Forma Returns]," nor did it violate "U.C.A. §§ 76-6-1102 or 76-6-1105 or . . . the [UCSPA]."[9] And thus, "[t]here was not an unlawful overt act committed by [HRB] upon which liability under a civil conspiracy theory could rest, nor has [Kirkham] pleaded any such act." Further, the court found that Kirkham failed to establish that HRB proximately caused her alleged damages, because she had been ordered to file the Amended Returns in the modification proceeding and refused to do so.

¶13 Finally, Alpine and the Widdisons moved under rule 12(c) to dismiss Kirkham's remaining claims: Claim 2 (Civil

---

8. Kirkham makes no mention of the trial court's treatment of Claim 7—as against Widdison—in her opening brief, and therefore we decline to address whether it was properly dismissed. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("Issues . . . that were not presented in the opening brief are considered waived and will not be considered by the appellate court." (cleaned up)).

9. Kirkham makes no mention of the trial court's treatment of Claims 4 and 5 in her opening brief, and therefore we decline to address whether they were properly dismissed. *See id.*

Conspiracy) against the Widdisons and all claims against Alpine.[10] The trial court converted the rule 12(c) motion to one for summary judgment, "giving [Kirkham] the opportunity to support her claims with deposition testimony, affidavits or other evidence." Ultimately, the trial court granted the motion in favor of the Widdisons, finding (1) "the Declaration of [Kirkham] . . . is merely a restatement of the allegations in the Complaint, and is not supported by personal knowledge on her part"; (2) "there is no evidence that [Alpine or the Widdisons] or any other defendant ever filed a tax return on behalf of [Kirkham] or conspired with others to do so"; and (3) "there is no evidence that a tax return was ever filed on behalf of [Kirkham] by anyone other than [Kirkham]."

¶14    After all Kirkham's claims were dismissed, HRB moved for attorney fees under Utah Code section 78B-5-825. The court concluded that Kirkham's claims against HRB lacked merit and were brought in bad faith and therefore, awarded HRB $61,464 in attorney fees.

¶15    Kirkham appeals.

---

10. Because of Alpine's insignificant role in this case—the Widdisons used Alpine's fax machine to send copies of the Tax Returns to HRB—the trial court disposed of all claims against it pursuant to this rule 12(c) motion by simply stating that "all Causes of Action against the Defendant Alpine Gardens, Inc., are hereby dismissed with prejudice." And while the trial court dedicated no analysis to the disposal of claims against Alpine, Kirkham has dedicated an equal paucity of analysis in her opening brief. Therefore, we limit our review to claims against HRB and the Widdisons as the appeal of the dismissal of claims against Alpine are inadequately briefed. *See Angel Inv'rs, LLC v. Garrity*, 2009 UT 40, ¶ 35, 216 P.3d 944 ("We have long held that we have discretion to not address an inadequately briefed argument.").

ISSUES AND STANDARDS OF REVIEW

¶16    Kirkham raises six issues on appeal. First, whether the trial court erroneously granted HRB's and the Widdisons' rule 12(b)(6) motions to dismiss on Claims 1, 3, 6, and 7. "We review a [trial] court's decision to grant a rule 12(b)(6) motion to dismiss a complaint for correctness, giving no deference to the [trial] court's ruling." *Van Leeuwen v. Bank of Am. NA*, 2016 UT App 212, ¶ 6, 387 P.3d 521 (cleaned up).

¶17    Second, whether the trial court erroneously granted HRB's rule 12(c) motion for judgment on the pleadings on Claims 2, 4, and 5. The same standard of review applies for a rule 12(c) motion as for one under rule 12(b)(6), and therefore we review the grant of a motion for judgment on the pleadings for correctness, giving no deference to the trial court's ruling. *Tuttle v. Olds*, 2007 UT App 10, ¶ 6, 155 P.3d 893.

¶18    Third, whether the trial court erroneously dismissed Claim 2 against the Widdisons, pursuant to rule 12(c). The record shows, however, that this rule 12(c) motion was converted into a rule 56 motion for summary judgment when matters and evidence outside the pleadings were presented to the trial court. Thus, "we review the [trial] court's summary judgment ruling for correctness and view all facts and reasonable inferences in favor of the nonmoving party." *USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 28, 235 P.3d 749 (cleaned up).

¶19    Fourth, whether the trial court erroneously granted HRB's motion to disqualify Kirkham's attorney. "The proper standard of review for decisions relating to disqualification is abuse of discretion." *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 18, 299 P.3d 1058 (cleaned up).

¶20    Fifth, whether the trial court erroneously granted a protective order governing discovery. A trial court's grant of a

protective order is reviewed for an abuse of discretion. *Spratley v. State Farm Mutual Auto. Ins. Co.*, 2003 UT 39, ¶ 8, 78 P.3d 603.

¶21 And sixth, whether the trial court erred by awarding attorney fees and costs pursuant to Utah Code section 78B-5-825. "The Utah Code requires a court to award reasonable attorney fees in a civil action to the prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." *Bresee v. Barton*, 2016 UT App 220, ¶ 15, 387 P.3d 536 (cleaned up). "The without merit determination is a question of law, and therefore we review it for correctness. The bad-faith determination is a question of fact and is therefore reviewed by this court for clear error." *Id.* (cleaned up).

ANALYSIS

I. Motions to Dismiss

¶22 "The purpose of a rule 12(b)(6) motion is to challenge the formal sufficiency of the claim for relief, not to establish the facts or resolve the merits of a case, and accordingly, dismissal is justified only when the allegations of the complaint clearly demonstrate that the plaintiff does not have a claim." *Van Leeuwen v. Bank of Am. NA*, 2016 UT App 212, ¶ 6, 387 P.3d 521 (cleaned up). Further, "we accept the factual allegations in the complaint as true" and we make all reasonable inferences in favor of the non-moving party, *Oakwood Village LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 9, 104 P.3d 1226, but we do not accept a complaint's legal conclusions as true, *Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 26, 21 P.3d 198 ("The sufficiency of . . . pleadings must be determined by the facts pleaded rather than the conclusions stated." (cleaned up)); *see also America West Bank Members, LC v. State*, 2014 UT 49, ¶ 7, 342 P.3d 224 ("When reviewing a dismissal under Rule 12(b)(6), . . . we accept the plaintiff's description of facts alleged in the complaint to be true, but we need not accept extrinsic facts not

pleaded nor need we accept legal conclusions in contradiction of the pleaded facts." (cleaned up)).

¶23 The trial court dismissed Kirkham's claims, pursuant to rule 12(b)(6), for tortious conversion, invasion of privacy, intentional infliction of emotional distress, and breach of fiduciary duty against HRB and the Widdisons. We examine each claim in turn.

A.    Claim 1—Tortious Conversion

¶24 "A conversion is an act of willful interference with a chattel, done *without lawful justification* by which the person entitled thereto is deprived of its use and possession." *Bonnie & Hyde, Inc. v. Lynch*, 2013 UT App 153, ¶ 30, 305 P.3d 196 (emphasis added) (cleaned up). The trial court concluded that Kirkham's conversion claim failed because "Kirkham's tax status is not property that can be converted" and "[e]ven if such an intangible interest were subject to a conversion,"[11] Appellees "plainly had lawful justification to use Kirkham's tax information . . . and did not deprive her of its use in any event." The court elaborated, "[t]ax returns and pro forma returns are commonly exchanged and prepared in such actions. The whole point of the modification as it related to the underlying tax exemptions . . . necessarily requires examining at least Kirkham's tax liabilities, with and without the exemption." Lastly, the court noted that "Kirkham could have sought protection on the use of such information in the context of discovery in that action, but did not do so."

¶25 Kirkham acknowledges that "Utah Appellate Courts have not explicitly recognized conversion as involving personal information as a chattel." Instead, her sole argument on appeal is

---

11. The court also noted, and we agree, that the precise issue is not whether the Pro Forma Returns were subject to conversion but whether the underlying information used in the returns was.

that the personal information in her tax returns should be considered property subject to conversion. In other words, Kirkham urges us to expand the definition of a chattel to apply to intangible property. We decline to do so. But even if we did, Kirkham has failed to demonstrate that Appellees were not legally justified in using that information or that they deprived her of the use of that information.

¶26   Appellees were legally justified to use Kirkham's tax information for two reasons. First, Kirkham did not seek any discovery classification or designation—such as "confidential" or "attorney's eyes only"—which would have limited its use by Appellees. Second, Appellees used Kirkham's tax information merely to prepare the Pro Forma Returns in order to demonstrate the impact of claiming, or not claiming, the exemption at issue—a practice that is commonplace in this type of litigation.

¶27   Finally, Kirkham has not argued that Appellees deprived her of the use of her personal information. Even if Appellees' use of Kirkham's information was improper, she was not precluded from also using that information, and in fact she makes no argument otherwise. We agree with the trial court that "[i]n a sense, Kirkham appears to be arguing that she was entitled to defy the trial court's order and refuse to file the [A]mended [R]eturns as ordered, and thus is entitled to sue for damages resulting from their filing." Therefore, we conclude that Kirkham's claim for tortious conversion was properly dismissed.

B.     Claim 3—Invasion of Privacy

¶28   Kirkham's invasion of privacy claim is based on misappropriation of her name or likeness.[12] To prevail under this tort theory, a party must show "(1) appropriation, (2) of

---

12. Kirkham conceded below that this claim was rooted in misappropriation of name or likeness.

another's name or likeness that has some intrinsic value, (3) for the use or benefit of another." *Stien v. Marriott Ownership Resorts, Inc.*, 944 P.2d 374, 379 (Utah Ct. App. 1997) (cleaned up). The trial court concluded that Kirkham's allegations were not sufficient to satisfy these elements. The court noted that Kirkham "alleges no intrinsic value of her name" and that her argument "that every name has intrinsic value" is "legally incorrect." Further, the court concluded that "[a]t the time the returns were allegedly filed, Kirkham had been ordered to file amended returns without claiming that exemption. Thus, there was no intrinsic value in Kirkham's name that was appropriated by the supposed filing." We agree.

¶29 On appeal, Kirkham dedicates a single paragraph to support her position that the trial court erred in dismissing this claim. She argues that her tax information is private and confidential under federal law and that therefore Appellees had "absolutely no right to amend those tax returns." Again, Kirkham's argument misses the mark. First, Kirkham herself produced the Tax Returns without any designation limiting their use. Second, the Widdisons used the Tax Returns merely to prepare the Pro Forma Returns for the court's consideration. Third, even if the Widdisons filed the Amended Returns, Kirkham has not demonstrated that doing so was a misappropriation of her name that benefitted the Widdisons.[13] And fourth, Kirkham fails to address the fatal defect in her complaint: that she has not alleged that her name has an intrinsic value. For these reasons, the trial court correctly dismissed Kirkham's invasion of privacy claim.

---

13. The Widdisons' only practical benefit arose from the signing and filing of IRS Form 8332, which transferred the child exemption to them from Kirkham. IRS Form 8332, however, was properly signed by the court clerk under rule 70 of the Utah Rules of Civil Procedure. Thus, Kirkham cannot—nor has she attempted to—demonstrate that filing the Amended Returns benefitted HRB or the Widdisons.

C.      Claim 6—Intentional Infliction of Emotional Distress

¶30    To state a claim for IIED, a party must allege that the defendant intentionally engaged in some conduct toward the plaintiff, "(a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality." *Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 25, 21 P.3d 198 (cleaned up).

¶31    Kirkham's allegations of IIED show that "she views the modification proceeding as one long pattern of intentional infliction of emotional distress." That is, she alleges that a host of perceived offenses in the course of the modification proceeding amount to IIED. These perceived offenses included attempts to reduce child support, hold her in contempt, and modify the decree. Other alleged offenses included Appellees' representations and actions taken in the course of litigation, dragging the case out, rushing to get to hearings when Kirkham's attorney withdrew, rule violations, and discovery abuses.

¶32    Indeed, on appeal, Kirkham furthers this line of reasoning by arguing that "[s]he has been forced to deal with the IRS and continues in her litigation with her ex-husband relating to those amended tax returns" and "[f]ew if any people and certainly no reasonable person can disagree that one cannot be allowed to take and use another person's tax returns and personal information." We deem these arguments unpersuasive for two reasons. First, as we have already noted, Kirkham did not designate her tax returns as confidential under a protective order when she produced them in the modification proceeding. Therefore, use of those returns to prepare the Pro Forma Returns was not extreme and outrageous—especially given that the tax exemption was one of the key issues at play in the modification proceeding.

¶33   Second, Kirkham's argument on appeal is essentially a recitation of her argument to the trial court below—that "she views the modification proceeding as one long pattern of intentional infliction of emotional distress." Simply put, "allegation[s] of improper filing of a lawsuit or the use of legal process against an individual is not redressable by a cause of action for [IIED]." *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 66, 70 P.3d 17. Accordingly, the IIED claim was properly dismissed.

D.     Claim 6—Breach of Fiduciary Duty

¶34   Kirkham contends that HRB owed her a fiduciary duty because "she was set up in HRB's system as a client." We reject this argument and affirm the trial court on this point because it is inadequately briefed in two aspects. First, Kirkham does not provide a citation to the record—nor have we been able to find one—in support of her position that she was set up in HRB's system as a client. *See Angel Inv'rs, LLC v. Garrity*, 2009 UT 40, ¶ 34, 216 P.3d 944 (declining to address a party's argument on appeal for lack of citations to the record). Second, even if she had cited the record, Kirkham does not provide any legal authority supporting her allegation that HRB became her fiduciary by entering her information into their system. *See id.* ¶ 35. Nor does she provide any reasoned argument to establish such a precedent under the facts of this case. In other words, we are not persuaded by the argument that HRB owed Kirkham a fiduciary duty when they were retained by the Widdisons to prepare Pro Forma Returns for the purpose of their litigation against Kirkham.

II. Motion for Judgment on the Pleadings

¶35   Next, Kirkham contends that the trial court erroneously granted HRB's rule 12(c) motion on Claim 2 for civil

conspiracy.[14] A claim for civil conspiracy requires "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Lawrence v. Intermountain, Inc.*, 2010 UT App 313, ¶ 12, 243 P.3d 508 (cleaned up).

¶36    The trial court—without deciding on the first three elements—concluded that Kirkham could not meet the final two elements of civil conspiracy. Specifically, the court concluded that HRB did not commit an unlawful or overt act, nor was HRB the proximate cause of damages (if any) that Kirkham sustained. We need not reach the issue of whether HRB committed an overt unlawful act[15] because we agree with the trial court that any alleged wrongdoing on HRB's behalf was not the proximate cause of the alleged damages suffered by Kirkham, and this determination is fatal to her claim.

¶37    Kirkham articulates an argument that damages arising under this claim include "[h]er 2012 tax refund [being] seized to pay for the tax liability created by the amended tax returns" and her "[spending] a considerable amount of time dealing with the IRS and still litigating with [Widdison]." These damages, however, were proximately caused by Kirkham's conduct, not HRB's. To be sure, the trial court, on remand from the modification appeal, found that due to Kirkham's refusal to sign and file the Amended Returns, Widdison "had to file his amended tax returns on his own . . . in the absence of

---

14. As noted, Claims 4 and 5 were also dismissed on this motion, but Kirkham has failed to brief those claims, instead focusing only on Claim 2. *See supra* ¶ 12 n.9.

15. We note, however, that in light of Kirkham's concession that HRB did not actually file her Amended Returns, we agree with the trial court that no unlawful act was committed by HRB.

[Kirkham's] amended return being filed. This led to [Kirkham's] tax [refund] for 2012 being seized." But the court found that "this is due to [Kirkham's] own lack of cooperation." If Kirkham would have filed the Amended Returns, notified Widdison of the new amount that she owed, and allowed Widdison to pay that amount to the IRS—as she was ordered to do—her 2012 tax refund would not have been seized. But due to Kirkham's contemptuous behavior, this did not happen. In other words, Kirkham was not entitled to disregard the modification order or claim damages arising from doing so. Therefore, this claim was properly dismissed.

### III. Motion for Summary Judgment

¶38 Next, Kirkham contends that the trial court erred by dismissing Claim 2—for civil conspiracy—against the Widdisons. Although Kirkham argues on appeal that this claim was dismissed pursuant to rule 12(c), we note that the trial court converted the motion to one for summary judgment, "giving [Kirkham] the opportunity to support her claims with deposition testimony, affidavits or other evidence." Thus, we will "affirm [the trial court's] grant of summary judgment [if] the record shows that there is no genuine issue as to any material fact and that [the Widdisons are] entitled to a judgment as a matter of law." *See Menzies v. State*, 2014 UT 40, ¶ 30, 344 P.3d 581 (cleaned up).

¶39 As an initial matter, Kirkham does not argue on appeal that a genuine issue as to a material fact exists or that she is entitled to judgment as a matter of law—rather, she argues that we must take her allegations as true under rule 12(c). We reject this argument because it ignores the conversion of the rule 12(c) motion to one for summary judgment, where a party cannot merely rest on its pleadings. *Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600 ("[O]n summary judgment . . . , the nonmoving party . . . may not rest upon the mere allegations or denials of the pleadings." (cleaned up)).

¶40 On summary judgment, Kirkham did produce a three-page declaration. However, as the trial court noted, that declaration "is merely a restatement of the allegations in the Complaint, and is not supported by personal knowledge on [Kirkham's] part"; "there is no evidence that [Alpine or the Widdisons] or any other defendant ever filed a tax return on behalf of [Kirkham] or conspired with others to do so"; and "there is no evidence that a tax return was ever filed on behalf of [Kirkham] by anyone other than [Kirkham]." Accordingly, because no genuine issue of material fact was created below, and because Kirkham has failed to argue that summary judgment was otherwise erroneously granted, we affirm the trial court on this issue.[16]

## IV. Motion to Disqualify

¶41 The trial court granted HRB's motion to disqualify Kirkham's attorney on the grounds of an appearance of impropriety. In *State v. Johnson*, 823 P.2d 484 (Utah Ct. App. 1991), this court "articulated a two-pronged test for determining on appeal whether an attorney should have been disqualified from a case because of an appearance of impropriety." *Id.* at 490. "First, the court must find that there is at least a reasonable possibility that some specifically identifiable impropriety occurred because of the representation." *Id.* (cleaned up). "Second, the court must balance the likelihood of public suspicion or obloquy against the social interest in allowing the defendant to continue being represented by the lawyer of his or her choice." *Id.* (cleaned up).

¶42 Kirkham now argues that "[HRB] is not telling the truth. [And] [a]t the very least [she] should have been afforded an evidentiary hearing before her attorney was disqualified." As an

---

16. Even if we were inclined to take Kirkham's argument at face value—that we must take her allegations as true—this claim still fails for the reasons we articulate in section II.

initial matter, these arguments do not address whether the trial court abused its discretion in its application of the facts of this case to the two-prong test set forth in *Johnson*. Further, we note that Kirkham has not cited any legal authority—nor do we believe that one exists—that entitles her to an evidentiary hearing before her attorney can be disqualified. Finally, even if we were to reach the conclusion that error was committed, Kirkham has not argued that she suffered any prejudice as a result. *See* Utah R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *Covey v. Covey*, 2003 UT App 380, ¶ 21, 80 P.3d 553. In any event, we determine that the record supports the trial court's conclusion that Kirkham's attorney was properly disqualified under *Johnson*.

¶43 The record here demonstrates "a reasonable possibility" that Kirkham's attorney committed "some specifically identifiable impropriety." *Johnson*, 823 P.2d at 490 (cleaned up). Kirkham does not dispute that her attorney gained employment with HRB without disclosing that he simultaneously represented Kirkham, who intended to bring this suit. Nor does Kirkham dispute that her attorney obtained documents during his employment at HRB that he intended to use in the current litigation.[17] This conduct potentially violates at least three rules of professional conduct—all of which could be grounds for disqualification. *See* Utah R. Prof'l Conduct 4.4(a) ("In representing a client, a lawyer shall not use . . . methods of obtaining evidence that violate the legal rights of [third parties]."); *see also id.* R. 8.4(c)–(d) ("It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation [or to] engage in conduct that is prejudicial to the administration of justice."). Further, in light

---

17. Kirkham instead argues that obtaining HRB's internal documents was not prejudicial to HRB because that information was discoverable.

of the fact that Kirkham does not dispute that this conduct occurred, we are hard-pressed to see how there is not at least a reasonable possibility of impropriety. Thus, we conclude that the trial court did not abuse its discretion in finding that Kirkham's attorney's conduct satisfied the first prong of *Johnson*.

¶44 The record also demonstrates that the trial court properly analyzed the second prong of *Johnson*—whether "the likelihood of public suspicion or obloquy" outweighed "the social interest in allowing the defendant to continue being represented by the lawyer of his or her choice." 823 P.2d at 490 (cleaned up). After considering the parties' submissions, the trial court concluded that the "likelihood of public suspicion or obloquy outweighs the social interest in allowing [Kirkham's attorney] to continue to represent [her]." And because Kirkham "has filed this action as a Tier 3 action and seeks extensive punitive damages," "it is likely that [she] will be able to obtain substitute counsel." Therefore, "the ongoing harm to public confidence and to [HRB] in allowing [Kirkham's attorney] to continue to represent [Kirkham] outweighs the minimal harm to [Kirkham] in having to obtain substitute counsel."

¶45 Kirkham makes no attempt to show that these findings are clearly erroneous. Counsel's obtaining employment at a target defendant's business would generally be perceived as underhanded by the public. Moreover, Kirkham does not even claim that she unsuccessfully tried to retain alternative counsel. Accordingly, the trial court's analysis was sound, and it was not an abuse of discretion to disqualify Kirkham's attorney.

## V. Protective Order

¶46 Kirkham next argues that the trial court erroneously granted a protective order governing discovery. Generally, a "trial court has numerous tools it must employ to prevent unwarranted disclosure of the confidential information, including the use of sealing and protective orders." *Spratley v. State Farm Mutual Auto. Ins. Co.*, 2003 UT 39, ¶ 22, 78 P.3d 603

(cleaned up). "The liberal use of these tools, and others inherent in a trial court's authority to govern the conduct of proceedings, is a prudent and sufficient safeguard against overbroad disclosure." *Id.*

¶47    Here, HRB moved the trial court to enter a protective order governing discovery. Kirkham objected, but rather than offering any alternative language to the proposed protective order, she requested that the court not enter the order at all. The trial court rejected Kirkham's objection, finding that "the order has procedure in it for designating documents as well as objecting to designations." The court confirmed the existence of these provisions on the record by asking HRB whether the "order [had a] procedure in it for designating documents as well as objecting to designations." HRB replied, "Yes."

¶48    Kirkham now contends that the trial court erred because the protective order precluded her from obtaining discovery. She fails, however, to provide a single citation to the record that would support her argument. Indeed, her arguments on appeal show only that HRB objected to some of Kirkham's requests for production on the grounds of relevance and privilege. For example, she argues that "requests [that] HRB produce from its records the tax returns and amended tax returns of [the Widdisons]" was objected to on the grounds of relevancy and privilege. Whether this objection was well-taken has nothing to do with whether a protective order should have been entered. Kirkham does not explain how the protective order impeded her ability to conduct discovery. Nor has Kirkham provided any meaningful argument that the trial court abused its discretion by entering what we view as a standard, garden-variety protective order. We conclude that the trial court acted well within its discretion. Moreover, Kirkham does not identify any prejudice associated with the entry of the protective order. Accordingly, Kirkham has provided no basis for reversal.

VI. Attorney Fees

¶49　Finally, Kirkham contends that the trial court erred in granting HRB's motion for attorney fees under Utah's bad faith attorney fees statute, which provides that "[i]n civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825 (LexisNexis 2018).[18] "To award fees pursuant to this section, a trial court must determine *both* that the losing party's action or defense was without merit *and* that it was brought or asserted in bad faith." *Fadel v. Deseret First Credit Union*, 2017 UT App 165, ¶ 30, 405 P.3d 807 (cleaned up).

A.　Without Merit

¶50　Kirkham argues that the trial court erred in concluding that her claims against HRB were without merit. "To determine whether a claim is without merit, we look to whether it was frivolous or of little weight or importance having no basis in law or fact." *Id.* ¶ 32 (cleaned up). In other words, "the bare existence of a basis in law for a potential claim is not sufficient to make a claim meritorious. Rather, there must also be a factual basis for a party's claims apart from a . . . theoretical basis in law." *Id.* (cleaned up).

¶51　Kirkham has not shown that the trial court erred in concluding that her claims were without merit. Kirkham's only meaningful allegation against HRB was that "[t]he amended tax returns for the years 2009, 2010 and 2011 in [Kirkham's] name were filed by . . . HRB." This allegation, if true, certainly could have given rise to a meritorious claim. Kirkham, however, conceded that "[HRB] didn't file the amended returns," and she

_____

18. Because the statutory provision in effect at the relevant time does not differ in any material way from the provision now in effect, we cite the current version of the Utah Code.

instead argued that "Widdison did." This concession is telling. If Kirkham knew that HRB had not filed her Amended Returns, we are left with only the allegation that HRB prepared Pro Forma Returns to assist in the underlying modification proceeding—an act that does not rise to the level of tortious or criminal conduct. Further, even after Kirkham conceded this point, she refused to drop her remaining claims against HRB. Thus, we conclude that there was no factual basis for Kirkham's claims against HRB and therefore, those claims were frivolous as a matter of law.

B.     Bad Faith

¶52     Kirkham contends that the trial court erred in finding that she did not bring her claims in good faith. She argues that "there was no evidentiary hearing and indeed no discovery" and "[t]he amounts of fees and costs awarded clearly indicate the court has not proceeded judiciously and has sought to limit [Kirkham's] access to the courts." This assertion does not address the findings that were the legal basis of the trial court's ruling.

¶53     To satisfy the bad faith element under the statute, a court "must find that the plaintiff (1) lacked an honest belief in the propriety of the activities in question; (2) intended to take unconscionable advantage of others; or (3) had intent to, or knowledge of the fact that the activities in question will hinder, delay or defraud others." *Fadel*, 2017 UT App 165, ¶ 35 (cleaned up). "On appeal, a trial court's finding of bad faith may be upheld despite a party's claim that he or she held a subjectively reasonable or honest belief in the propriety of the claims . . . raised during the course of a case." *Id.* (cleaned up). Thus, we will affirm a finding of bad faith "when there is sufficient evidence in the record to support a finding that at least one of the three factors applies." *Id.* (cleaned up).

¶54     Here, we conclude that the trial court's bad faith finding was not clearly erroneous for three reasons. First, as discussed above, Kirkham conceded that HRB did not file the Amended Returns. When Kirkham alleged that HRB did file the Amended

returns, she clearly "lacked an honest belief in the propriety of the activities in question." *See id.* (cleaned up). Second, Kirkham's general allegation that she suffered damages as a result of the Amended Returns being filed is in direct contradiction to the ruling made in the modification proceeding ordering Kirkham to sign and file the Amended Returns. *See Warner v. Warner*, 2014 UT App 16, ¶¶ 35–37, 319 P.3d 711 (affirming a finding of bad faith when a party prepared an order that was "180 degrees different than what the court ruled" (cleaned up)). Third, Kirkham, on appeal, has declined to provide a single meaningful citation to the record[19] or otherwise provide analysis or legal authority in support of her position. Instead, Kirkham provides the conclusory statement that "[t]he amounts of fees and costs awarded clearly indicate the court has not proceeded judiciously and has sought to limit [her] access to the courts." Again, this assertion does not directly confront the basis of the trial court's ruling and fee award. Further, HRB supported their motion below with assertions of bad faith actions that Kirkham does not mention, let alone rebut. In failing to directly address the basis of the trial court's ruling and additionally failing to confront the record evidence of bad faith, we conclude that Kirkham has not established a basis for overcoming the trial court's bad faith finding—and therefore, she has failed to meet her burden of persuasion on appeal. *See State v. Nielsen*, 2014 UT 10, ¶ 41, 326 P.3d 645.

¶55   Next, we reject Kirkham's argument that "[t]he amounts of fees and costs awarded clearly indicate the court has not proceeded judiciously and has sought to limit [Kirkham's] access to the courts." As we have discussed above, *supra* ¶¶ 50–54, the trial court's award was justified under the bad faith attorney fee statute. Furthermore, this conclusory statement does not provide a basis for us to reverse by showing that the "amounts of fees and costs awarded" were unreasonable or excessive. *Turtle*

---

19. Kirkham cites the record only to indicate that a full motion cycle and ruling on attorney fees was made below.

*Mgmt., Inc. v. Haggis Mgmt., Inc.*, 645 P.2d 667, 671 (Utah 1982) ("The amount to be awarded as attorney[] fees is generally within the sound discretion of the trial court" and will be "upheld . . . where the amount does not appear to be unreasonable." (cleaned up)). Therefore, besides affirming the award in general, we decline to disturb the trial court's finding of the amount of fees awarded below.

¶56   Finally, HRB seeks an award of attorney fees incurred on appeal. "Generally, when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Fadel*, 2017 UT App 165, ¶ 38 (cleaned up). "This rule applies when the basis for attorney fees in the trial court is the bad faith statute." *Id.* (cleaned up). HRB has successfully defended the trial court's dismissal of Kirkham's claims, and the trial court awarded attorney fees pursuant to Utah Code section 78B-5-825. Therefore, we grant HRB's request for an award of attorney fees on appeal.

## CONCLUSION

¶57   We conclude that all of Kirkham's claims were properly dismissed, the trial court did not erroneously disqualify Kirkham's attorney, the trial court properly entered a protective order, and HRB was properly awarded attorney fees. We further award HRB's costs and attorney fees on appeal. We remand to the trial court only to determine HRB's fees on appeal.

————